## DESTRUCTION OF UNWHOLESOME MILK LEGAL.

[Common Pleas Court of Hamilton County.]

BENJAMIN KAISER v. EDWARD WALSH, ASSISTANT MILK INSPEC-
TOR OF THE CITY OF CINCINNATI.

Decided, November 24, 1906.

*Board of Health—Powers of, With Reference to Destruction of Un-
wholesome Milk—Ordinance Regulating Temperature of Milk on
Sale Legal—Nuisances—Things Which are Such by Nature, and
Which are Made Such by Manner of Use—Taking Property With-
out Due Process of Law.*

1. A resolution of a board of health providing that "all milk, the
temperature of which shall be found on examination or test to
be above fifty degrees Fahrenheit, shall be confiscated, forfeited,
and immediately destroyed by or under the direction of a health
officer or milk inspector," is not unconstitutional.

2. There are some things which are public nuisances by nature. Such
are things which are harmful to the public health, as unwhole-
some food. An ordinance providing for the immediate destruc-
tion of such a nuisance by an official is not in contravention of
that constitutional guaranty which provides that no man's prop-
erty may be taken without due process of law. When the thing
itself is not a nuisance, as a house or animal, for instance, but
the way in which it is used is a nuisance, then the thing can not be
destroyed; its illegal use must be punished.

LITTLEFORD, J.

The petition states that Kaiser, the plaintiff, sells milk in
Cincinnati and that Walsh, the defendant, is the milk inspector,
and that the defendant, Edward Walsh, the milk inspector of
the city of Cincinnati, on the 24th day of August, 1906, got
upon one of plaintiff's milk wagons, and, after inserting a ther-

mometer into a can of milk to ascertain its temperature, threw the milk into the street.

The petition further says that the defendant, Edward Walsh, threatens to, and will, unless restrained by this court, again board some one of plaintiff's milk wagons, to test the temperature of the milk, and if he finds on test that the milk is above fifty degrees Fahrenheit, he will again destroy the milk.

The petition further says that the defendant is acting under a resolution of the Board of Health of the City of Cincinnati, adopted July 17, 1906, a copy of which is set forth, and one clause of which reads:

"All milk, the temperature of which shall be found on examination or test, to be above fifty degrees Fahrenheit, shall be confiscated, forfeited, and immediately destroyed, by, or under the direction of, the health officer or milk inspector."

Plaintiff further alleges in his petition that this resolution is unconstitutional, null and void and of no effect, and is in contravention of Article I, Sections 1, 5, 10, 14, 16 and 19, of the Bill of Rights, and Article IV, Section 1, of the Constitution of the State of Ohio, and Articles IV, V, VI, and XIV, in addition to, and amendment of, the Constitution of the United States of America. On the ground that this resolution is unconstitutional, plaintiff prays that the defendant be restrained from continuing to do the acts complained of.

The constitutional provisions which are referred to are as follows: Article I, Section 1, guarantees the right to possess and protect property; Section 5 provides that the right of trial by jury shall be inviolate; Section 10 provides that no person shall be held to answer for crime unless on presentment or indictment of a grand jury, and to have a speedy trial by an impartial jury; Section 14 guarantees the right of the people against unreasonable searches and seizures; Section 16 insures to every person, for an injury done him in his lands, goods, person or reputation, remedy by due course of law; and Section 19 is to the effect that private property shall not be taken for public use until compensation therefor shall first be made in money. Article IV, Section 1, of the Constitution

of the State of Ohio, provides that judicial power shall be vested in certain courts, naming them.

Articles, IV, V, VI, VI and XIV in addition to, and amendment of, the Constitution of the United States of America, are as follows: Article IV forbids unreasonable searches and seizures; Article V provides that no person shall be held to answer for crime except upon presentment or indictment by a grand jury, nor shall he be deprived of life, liberty or property without due process of law; Article VI provides for public trial by an impartial jury, and Article XIV provides that no state shall deprive any person of life, liberty or property without due process of law.

It will be seen that these constitutional sections frequently overlap each other. To sum up these numerous provisions upon which the plaintiff relies, it may be said that they amount to this: That no man shall be deprived of his property without *due process of law.*

It should be said here that the resolution of the board of health has the same effect as an ordinance, by virtue of Section 1536-731, Revised Statutes.

In support of his contention, the learned counsel for plaintiff cites the following cases:

*Rosebaugh* v. *Saffin, Marshal of Cincinnati,* 10 Ohio, 31, holds that an ordinance providing for the sale of straying hogs, after keeping them three days and advertising the same, is unconstitutional.

*Fagin* v. *The Ohio Humane Society,* 6 N. P., 357, holds that a statute authorizing the humane society to dispose of unlicensed dogs is unconstitutional.

*Yensen* v. *The State of Ohio,* 7 N. P., 18, holds that a statute giving authority to any person to destroy fish nets which are being used in violation of law, is unconstitutional; and the same holding with refernce to fish nets is made in *French* v. *Shirley,* 7 N. P., 26.

*Archer* v. *Baertschi,* 8 C. C., 12, holds that an ordinance of the city of Toledo providing for the sale of dogs found running at large without license checks, is unconstitutional.

*Edson et al* v. *Crangle et al,* 62 O. S., 49, holds that a statute authorizing the seizure of a fish net which is being illegally used, is unconstitutional.

*King* v. *Hayes,* 80 Me., 206, holds that a statute authorizing an officer of a humane society to condemn and kill a horse that is of no value to the owner, is unconstitutional.

As against this array of cases, the learned counsel for the defendant cites two well-considered cases which hold that an ordinance providing for the destruction of milk, just like that under consideration, is not contrary to any constitutional provision. These two cases are the following:

*Blazier et al* v. *Miller,* 10 Hun., 435, holds that an ordinance of the board of health of the city of Syracuse, authorizing the milk inspector to destroy milk, which he has reasonable cause to believe is below the standard, is a valid ordinance.

*Deems* v. *Mayor and City of Baltimore,* 80 Md., 164, holds that the constitutional guaranties concerning property and liberty are not to be construed as abridging the power of the state to pass a law authorizing an official to destroy milk found to be below the legal standard.

In addition to these cases, the following authorities are cited for the deefndant:

"It is fairly established by adjudications too numerous to mention that a state may in the exercise of its police power authorize the destruction of such property as has become a public nuisance or has an unlawful existence or is noxious to the public health." *Houston* v. *State,* 98 Wis., 481, 486.

"The acknowledged police power of a state extends even to the destruction of property. A nuisance may be abated. Everything prejudicial to the health or morals of a city may be removed. Merchandise from a port where a contagious disease prevails, being liable to communicate the disease, may be excluded; and in extreme cases, it may be thrown into sea. * * * It is a power essential to self-preservation and exists necessarily in every organized community." License Cases, 5 How., 504, 589.

"An act which * * * makes animals with contagious diseases or infectious diseases, common nuisances, authorizing their destruction by certain officials under certain conditions" is not unconstitutional. *Newark Ry. Co,* v, *Hunt et al,* 50 N. J. L., 308.

"It can not be denied that in many cases a nuisance can only be abated by the destruction of the property in which it consists. The cases of infected cargo or clothing and of impure and unwholesome food are plainly of this description. They are nuisances *per se*, and their abatement is their destruction. So, also, there can be little doubt, as we conceive, that obscene books or pictures, or implements only capable of an illegal use, may be destroyed as a part of the process of abating the nuisance they create, if so directed by statute. The keeping of a bawdy house, or a house for the resort of lewd and dissolute people. is a nuisance at common law. But the tearing down of the building so kept, would not be justified as the exercise of the power of summary abatement, and it would add nothing, we think, to the justification that a statute was produced authorizing the destruction of the building summarily as a part of the remedy. The nuisance consists in the case supposed in the conduct of the owner or occupants of the house, in using or allowing it to be used for the immoral purpose, and the remedy would be to stop the use. This would be the only mode of abatement in such case known to the common law, and the destruction of the building for this purpose would have no sanction in common law or precedent." *Lawton et al* v. *Steele,* 119 N. Y., 226, 238.

A well-considered case in Ohio is *Deming* v. *City of Cleveland,* 22 C. C., 1. It was a case in which a stream of water, running through plaintiff's land, was diverted from its course by the council of the city of Cleveland and turned into an artificial water-course above the plaintiff's premises. It appears that the banks of the stream were so covered with rubbish and filth as to make the stream a nuisance. The court held that the act of the Legislature conferring power on the city of Cleveland to divert this stream was unconstitutional and void. In the long and well-considered opinion, the learned court evidently recognizes the principle that while a statute or an ordinance can not decree the destruction of property because it is used in some improper way so as to be a menace to the public health, just to punish the owner of the property for so using it, still it can decree the destruction of property the very existence of which endangers the health of the public.

The adoption of the provisions of the Constitution of the United States and of the State Constitution, that no man shall

be deprived of his property without "due process of law," did not abolish the principle of the common law that either the king or any of his subjects had the right to summarily abate a public nuisance—for such abatement was due process of law within the meaning of Magna Charta.   If a mistake was made, then there was a cause of action.

If a private individual may abate a public nuisance, a duly authorized official, acting under the provisions of a statute or ordinance, can certainly do so.

There are some things which are public nuisances by nature. Such are things which are harmful to the public health, as unwholesome food.   An ordinance providing for the immediate destruction of such nuisances by an official is not in contravention of that constitutional guaranty which provides that no man's property may be taken without due process of law. When the thing itself is not a nuisance—as a house or an animal, for instance—but the way in which it is used is a nuisance, then the thing can not be destroyed; its illegal use must be punished.

The demurrer is sustained.

*Renner & Renner,* for plaintiff.

*John R. Schindel,* for defendant.