CASE 78—PETITION EQUITY—OCTOBER 7.

# Commonwealth vs. Jackson.

APPEAL FROM M'LEAN CIRCUIT COURT.

1. An act of the General Assembly authorizing a suit to be prosecuted against the State, and directing, in case judgment is rendered in favor of the plaintiff, that the Auditor shall draw his warrant for the amount, which shall be paid by the Treasurer, *is not in conflict* with section 40, article 2, of the Constitution of this State, even though the *yeas and nays* were not entered on the journal on the passage of the bill.

2. Such an act, providing only for the prosecution and defense of a suit for damages to the plaintiff's property named in the act, did not authorize an inquiry into the plaintiff's title, nor the rescission of a contract made by the plaintiff with the President of the Board of Internal Improvement, in reference to the property, a breach of which was set up in the suit as a ground of recovery.

3. At the time the agent of the State committed the acts complained of as having injured the plaintiff's property, the property was owned jointly by the plaintiff and another; but before the passage of the act authorizing the plaintiff to prosecute his suit against the State to recover damages, the plaintiff became the owner of the whole property—the act only provided for the recovery of such damages as the plaintiff sustained; and—

The plaintiff had no right to recover for the injury done to the one half of the property of which he was not the owner at the time the alleged injury occurred.

JOHN RODMAN, Attorney General,    For Appellant,
CITED—
*House Journal*, 1867, *pp*. 344, 733, 782, 800, 813.
*Senate Journal*, 1867, *pp*. 346, 645, 721, 737, 757..
*Constitution of Kentucky, sec*. 40, *art*. 2.

A. J. JAMES,    For Appellee,
CITED—
*Act of March* 9, 1867, *Session Acts, chap*. 1952.
1 *Chitty on Pleading, p*. 76.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

In July, 1856, the appellee, John T. Jackson, and N. C. Beckham, purchased at a decretal sale a small parcel of land, with saw and grist-mills thereon, situated on the north bank of Green river, at lock and dam No. 2. The mills had been erected many years before by John Calhoun, who owned the ground adjacent to the slackwater dam, which was never condemned to the use of the State; and the water necessary to operate the mills was drawn from the river above the dam, by means of a canal constructed by Calhoun.

In September, 1857, some controversy having arisen between Beckham, who seems then to have been controlling the mill property, and the Board of Internal Improvement, in relation to the use of water power in running the mills, an agreement was entered into by Beckham and D. R. Haggard, as President of said Board, by which Haggard undertook for the State that the Board would keep said canal in good condition and repair; and would also "keep the head of the forebay and gates in like good order; and also to protect the point below the mills, and keep it from injuring the public works at that point." And the parties further stipulated as follows: "Said Beckham is not to pay for

water power, provided he quiets the claims of the persons who are entitled to the benefit of the proceeds of the sale of the mill property, sold under a decree of the circuit court, at which sale Beckham became the purchaser of said property at lock No. 2, on Green river. In the event Beckham pays the whole of the purchase money, and conveys the same to the State of Kentucky, all of lot No. 1, upon which said mill property and abutment and other appurtenances are situate, then the State of Kentucky is to pay said Beckham the sum of fifteen hundred dollars, as the consideration for said conveyance of said lot No. 1, and appurtenances; the mills, however, are excepted therefrom; the rates for water power to be regulated in every particular upon the same principle; and the rules and regulations pertaining to his lease of water shall just be the same as pertains to other leases on the Green and Barren rivers line of public improvement."

Afterwards, in 1863, when said contract had been partially executed, the water passing through the canal having broken certain obstructions made by the State near the mills, the agent of the State caused the canal to be filled up, and thus deprived the owners of the mills entirely of the use of water power.

Jackson appears afterwards to have become the owner of Beckham's interest in the mill property, by a conveyance made by Beckham on the 13th day of June, 1864; and afterwards Jackson obtained the passage of an act of the Legislature, which was approved March 9, 1867, authorizing him to sue the State, which is as follows:

" SEC. 1. That it shall be lawful for the said John T. Jackson to institute a suit, by proceedings in equity, against the Commonwealth of Kentucky, in the McLean circuit court, to recover from the Commonwealth

the damages he has sustained in consequence of the alleged fact that the Board of Internal Improvement closed and filled up the canal conducting water to his mill: *Provided*, Before the court shall entertain the said action, process shall be served upon the president of the said board, whose duty it shall be to defend the same.

"Sec. 2. It shall be the duty of the attorney for the Commonwealth, for the judicial district, to defend the said suit, and set forth and allege any fact controverting the claims that have existed, or may exist.

"Sec. 3. If the judgment of the circuit court shall be in favor of the plaintiff, and no appeal be taken, or if any appeal be taken to the court of appeals, and the judgment be affirmed, the Auditor shall draw his warrant in favor of the plaintiff, upon the Treasurer, for the amount of the judgment, and the Treasurer is directed to pay the same."

Under the provisions of this act, the appellee brought this action against the State, which resulted in a judgment for the plaintiff for ten thousand dollars, from which this appeal is prosecuted.

In the argument for the Commonwealth, by the Attorney General, the correctness of the judgment is questioned on several grounds, which, so far as deemed important, will be separately stated and considered.

1. It is insisted that the act we have quoted is in contravention of the 40th section of article 2 of the State Constitution, which declares that "the General Assembly shall have no power to pass any act or resolution for the appropriation of any money, or the creation of any debt, exceeding the sum of one hundred dollars, at any one time, unless the same, on its final passage, shall be voted for by a majority of all the members then elected to each branch of the General Assembly, and the yeas and nays

thereon entered on the journal;" the fact being sug-
gested, as appearing by the journal of the House of
Representatives, that the bill was passed by that body
without entering the "yeas and nays" thereon.

Waiving the question whether, as the act was not as-
sailed as unconstitutional in the lower court for the rea-
son now suggested, by either pleading or evidence, it is
competent for this court, on its own judicial knowledge
of the journal of the House, to inquire into the validity
of the act; and the further question, whether said pro-
vision of the Constitution is, so far as applicable to this
case, mandatory and imperative, or only directory, we
are of the opinion that the act does not admit of the as-
sumed construction, that it is not necessarily either for
the appropriation of money, or the creation of a debt ex-
ceeding one hundred dollars. The first and second sec-
tions of the act, which authorize the suit and provide for
the defense by the State, are clearly free from the objec-
tion.

And although, by the third section of the act, the
auditor may be required, contingently and ultimately,
to draw his warrant on the treasurer for a sum ex-
ceeding one hundred dollars, yet, as this is dependent
on the result of the litigation authorized by the act,
and as, in the construction of statutes, no doubtful in-
terpretation should be indulged against the validity of
a law, we must adjudge the enactment constitutional,
whether the yeas and nays were entered on its pas-
sage or not.

2. It is further objected that the plaintiff failed to
show a sufficient title in himself to the mill property;
and that the court erred in refusing to entertain a con-
troversy as to the validity of the plaintiff's title. But,
in our opinion, the litigation authorized by the act of

the Legislature was restricted to the prosecution and defense of an action for damages for the injuries to the property of the plaintiff mentioned in the act, and that no suit to enforce or rescind the contract between Haggard and Beckham was provided for.

3. A further objection to the judgment is, that while it appears from the petition and the evidence, that when the agents of the State committed the acts complained of, Beckham was a joint owner with the plaintiff, of the property; and, although the act of the Legislature only authorized a suit for such damages as were sustained by the appellee alone, the judgment is for the entire amount of damages sustained by both the owners of the property.

This objection seems to us to be well taken, and must prove fatal to the judgment. The deed from Beckham to the appellee does not purport to transfer to him any claim of Beckham against the State, and the act of the Legislature does not provide for, or contemplate any litigation as to damages sustained by him. The proof of damages was not restricted to the injury sustained by the plaintiff, but embraced the entire injury to the property, and the judgment is correspondingly erroneous.

Wherefore, the judgment is reversed, and the cause remanded, for further proceedings not-inconsistent with this opinion.