APFELBACHER, Appellant, vs. THE STATE and others, Respondents.

*January 12—April 16, 1915.*

*States: Liability for torts of officers: Governmental functions: Propagation of fish: Injury to mill property: Leave to bring suit: Statute construed: Liability of state not affected: Respondeat superior: When doctrine applicable: Constitutional law: Waiver by state of immunity from suit: Equal protection of the laws.*

1. The state is not liable for the tortious acts of its agents and officers while engaged in the discharge of a governmental function.

2. The propagation of fish by the state is a governmental function, and the state is not liable for negligence of its officers in conducting this work. [Whether the state would be liable if the propagation of fish were considered a proprietary instead of a governmental enterprise, not decided.]

3. Ch. 624, Laws of 1913, authorizing the plaintiff in this case to bring suit for the purpose of settling his controversies with the state, removes the state's immunity from suit, but does not pass upon the question of liability of the state.

4. The nonliability of a sovereign for torts arising out of the prose-

cution of governmental functions is based upon grounds of pub-
lic policy distinct from the immunity of the sovereign from suit.

5. The doctrine of *respondeat superior* has by courts been applied
to public subdivisions of the state only in those cases where the
municipality has been engaged in a proprietary enterprise which
may or does result in a financial benefit, although the legislature
has from time to time made exceptions to this rule.

6. Denial of the application of the doctrine of *respondeat superior*
to the state when exercising a governmental function does not
affect the injured person's right of action against the person or
persons actually committing the wrong.

7. Waiver of immunity from suit by a state, in such cases as the
legislature may deem proper, is not a denial of the equal protec-
tion of the laws to persons within its jurisdiction; hence a stat-
ute specially granting leave to an individual to sue the state, but
not enlarging his claim in any manner, does not contravene
sec. 1, Amendm. XIV, Const. of U. S.

APPEAL from a judgment of the circuit court for Wauke-
sha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Action for damages for the alleged negligent operation of
a dam. The material allegations of the amended complaint
are:

"That at all the times hereinafter mentioned he [plaintiff]
was, and now is, the owner in fee of certain real estate, dam,
mill, and mill race, situate on the Bark river, in the town of
Summit, Waukesha county, *Wisconsin,* and more particularly
described as follows, to wit: [Here follows description of
lands.]

"That the Bark river is a river situated in the county of
Waukesha, state of *Wisconsin,* and that portion upon which
the mill property of this plaintiff is situated, as aforesaid,
runs in a general southwesterly direction from the lower or
western end of Nagawicka Lake to the lower or southern end
of Upper Nemahbin Lake, and that the property of this
plaintiff is situated upon said river at a distance of about one
mile from the opening of Nagawicka Lake.

"That for upwards of seventy (70) years prior to the com-
mencement of this action, this plaintiff and his predecessors
in title had maintained said mill and dam, and that during
all of said period of time said plaintiff and his predecessors
in title have claimed adversely to all the world, and have in

fact enjoyed and maintained a head of water at said dam of from (9) nine to (11) eleven feet in height, and that such use has been maintained openly, peacefully, and adversely at all times.

"Plaintiff further alleges that the above named defendant, *Ephraim Humphrey,* is the owner of a certain mill property upon that portion of the Bark river northeasterly and above the mill property of this plaintiff and immediately west of the opening of said Nagawicka Lake. That the exact time when said mill was constructed and dam built by the predecessors in title of said defendant *Humphrey* is not known to this plaintiff, but said mill was built and dam constructed long subsequent to the construction of the mill property of this plaintiff, and that said mill was built and said dam constructed more than fifty (50) years before the commencement of this action, and that during said period of fifty (50) years the two mills have been operated and maintained upon said Bark river and have jointly used the water therefrom for their mill purposes.

"Plaintiff further alleges that the above named defendants, *Francis E. McGovern, ex officio* as governor of the state of *Wisconsin, Jabe Alford, E. A. Birge, George W. Peck, A. L. Osborne, James O. Davidson, John C. Burns,* and *B. C. Walters,* constitute the fish commission of the state of *Wisconsin,* and as such have charge, supervision, and direction of the several fish hatcheries maintained by the state of *Wisconsin* pursuant to the laws of said state.

"That some time in the year 1906 the state of *Wisconsin* acquired certain real estate situate upon said Bark river, midway between the two mills hereinbefore described, and that for the purpose of conducting a fish hatchery thereon a series of ponds of considerable extent have been excavated and connected, and that said ponds require a large amount of water to be suitably operated in connection with said hatcheries.

"That as this plaintiff is informed and verily believes and charges the fact to be, at the time of the installation of said fish hatchery the above named defendant, the state of *Wisconsin,* through the above named fish commissioners, defendants herein, or their predecessors in office, entered into a certain contract or agreement with said defendant *Humphrey,* wherein and whereby it was agreed that if at any time the

water in said Nagawicka Lake should reach so low a stage as to endanger what in the opinion of said fish commission would constitute a sufficient supply of water for said hatchery, then and in that case the said defendant *Humphrey* promised and agreed that he would shut down his mill until such time as the water should again reach such a stage that said fish commission should determine that the running thereof might be continued.    And this plaintiff further alleges that in and by said contract said fish commissioners were granted practical supervision and control over the water at said *Humphrey* dam, and that ever since the making of said contract said fish commissioners have exercised the rights therein granted and controlled the head of said water at all times.

"That on the night of May 27, 1912, the said defendants fish commissioners, through their agents and servants, negligently and carelessly, and without having a proper regard for the rights of this plaintiff, removed the flashboards in the runway at the said *Humphrey* dam and kept them out for the entire night, thereby turning loose great volumes of water in and upon the mill-pond and dam of this plaintiff, such water being of sufficient volume to destroy the flume used by this plaintiff in connection with his said mill, and in fact did destroy the same, and further, to destroy and carry away a portion of this plaintiff's mill-dam, and did in fact destroy and carry away the same.

"That at the time of the removal of said flashboards there was a great head of water at the said *Humphrey* dam proceeding from Nagawicka Lake, and a quantity greatly in excess of the usual amount at said place, caused by heavy recent rains, and the defendants, and each of them, and their servants, agents, and employees, knew this fact, and notwithstanding the same they did remove said flashboards and turn loose the waters at said dam negligently and carelessly and in such a manner as to absolutely destroy the flume and mill-dam of this plaintiff as aforesaid.

"This plaintiff further alleges that the contract entered into by said *Humphrey* with the state of *Wisconsin* and its fish commissioners is in derogation of the vested rights of this plaintiff, and that said *Humphrey* had no right to authorize or permit the said state of *Wisconsin,* or its fish commissioners, to exercise, or to attempt to exercise, any control over the

waters at said *Humphrey* dam, or to authorize the said state of *Wisconsin,* or its fish commissioners, to enter upon his said premises and remove said flashboards to the damage of this plaintiff as aforesaid.

"That this plaintiff is dependent for his maintenance upon his income derived from the operation of his said mill, and that by reason of the premises he is unable to operate the same in any way or manner whatsoever. That his business has been seriously injured and practically destroyed. That it will cost him at least thirty-five hundred dollars ($3,500) to replace the flume and restore his mill to the condition in which it was before said 27th day of May, 1912, and that he has been irretrievably damaged by reason thereof.

"That this plaintiff is unable to state how long it will be before he can restore his mill to operation, but alleges upon information and belief that it will take at least two (2) months so to do, and that he had already lost, and that during said period of time he will continue to lose, large numbers of his customers, to an extent that will render his mill property practically valueless.

"That this plaintiff has been damaged to an amount exceeding the sum of twenty thousand dollars ($20,000)." . . .

"Plaintiff further alleges that this suit has been authorized by the defendant, the state of *Wisconsin,* by general law known as chapter 624 of the Laws of 1913, which said law was duly enacted by the legislature of the state of *Wisconsin* at the 1913 session thereof, approved by the governor, officially published in the Madison State Journal, and now is the law of this state."

The defendants, the state of *Wisconsin* and the commissioners of fisheries, answered, and among other defenses denied negligence on their part, and alleged that plaintiff's damages, if any, were caused by his own negligence. At the opening of the trial they interposed a demurrer *ore tenus* on the ground that the complaint failed to state facts sufficient to constitute a cause of action against them. The demurrer was sustained, and a judgment dismissing the complaint as to the demurring defendants was entered. From such judgment the plaintiff appealed.

For the appellant there were briefs by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, and oral argument by *Mr. Stebbins.* They cited, among other cases, *Houston v. State,* 98 Wis. 481, 74 N. W. 111; *Chisholm v. Georgia,* 2 Dall. (U. S.) 419; *State v. Curran,* 7 Eng. (12 Ark.) 321, 340; *Coster v. Albany,* 43 N. Y. 399; *Williams v. Stale,* 94 App. Div. 489, 492, 88 N. Y. Supp. 19; *Pike v. State,* 20 La. Ann. 547; *Amstein v. Gardner,* 134 Mass. 4; *Metz v. Soule, K. & Co.* 40 Iowa, 236; *Wright v. Eldred,* 46 Hun, 12, affirmed in 137 N. Y. 556, 33 N. E. 337; *Shaver v. Eldred,* 114 N. Y. 579, 21 N. E. 411; *Waller v. State,* 144 N. Y. 579, 39 N. E. 680; *Lakeside P. Co. v. State,* 15 App. Div. 169, 14 N. Y. Supp. 281; *Sayre v. State,* 123 N. Y. 291, 25 N. E. 163; *Woodbridge v. Marks,* 5 App. Div. 604, 40 N. Y. Supp. 728; *Woodman v. State,* 127 N. Y. 397, 28 N. E. 20; *Gibney v. State,* 137 N. Y. 1, 33 N. E. 142; *Spencer v. State,* 110 App. Div. 585, 97 N. Y. Supp. 154, affirmed in 187 N. Y. 484, 80 N. E. 375; *Chisholm v. Stale,* 141 N. Y. 246, 36 N. E. 184; *Sipple v. State,* 99 N. Y. 284, 1 N. E. 892, 3 N. E. 657; *Bowen v. State,* 108 N. Y. 166, 15 N. E. 56, 443; *Comm. v. Jackson,* 5 Bush, 680; 1 Cooley, Torts (3d ed.) 208; *Louisiana v. Jumel,* 107 U. S. 711, 728, 2 Sup. Ct. 128.

For the respondents *State of Wisconsin* and the *Commissioners of Fisheries* there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.* They argued that the state is not liable for the torts of its officers. 26 Am. & Eng. Ency. of Law (2d ed.) 480; *Houston v. State,* 98 Wis. 481, 74 N. W. 111; *Lowe v. Conroy,* 120 Wis. 151, 159, 97 N. W. 942; *Chapman v. State,* 104 Cal. 690, 38 Pac. 457; *Bourn v. Hart,* 93 Cal. 321, 28 Pac. 951; *Green v. State,* 73 Cal. 29, 11 Pac. 602, 14 Pac. 610; *Moody v. State's Prison,* 128 N. C. 12, 38 S. E. 131; *Murdock P. G. Co. v. Comm.* 152 Mass. 28, 24

N. E. 854; *Billings v. State,* 27 Wash. 288, 67 Pac. 583; *Lewis v. State,* 96 N. Y. 71; 36 Cyc. 881, and cases cited under note 13; *Cassidy v. St. Joseph,* 247 Mo. 197, 152 S. W. 306; *State v. Mut. L. Ins. Co.* 175 Ind. 59, 71, 93 N. E. 213. Ch. 624, Laws of 1913, did not create any liability against the state where none existed before, but had the effect simply of waiving the state's immunity from suit; for it is well settled that the exemption of the state from liability for the torts of its officers does not depend upon its immunity from suit without its consent, but rests upon grounds of public policy which forbid that any such liability should ever arise. 26 Am. & Eng. Ency. of Law (2d ed.) 480; *Moody v. State's Prison,* 128 N. C. 12, 38 S. E. 131; *Bourn v. Hart,* 93 Cal. 321, 28 Pac. 951; *Murdock P. G. Co. v. Comm.* 152 Mass. 28, 24 N. E. 854; *Lewis v. State,* 96 N. Y. 71; *Billings v. State,* 27 Wash. 288, 67 Pac. 583; *Chapman v. State,* 104 Cal. 690, 38 Pac. 457; 36 Cyc. 881; *Chicago, M. & St. P. R. Co. v. State,* 53 Wis. 509, 10 N. W. 560. And see *Riddoch v. State,* 68 Wash. 329, 123 Pac. 450. Ch. 624, Laws of 1913, is unconstitutional in that it gives to this plaintiff rights and privileges denied to every other citizen in the state of Wisconsin whether under similar circumstances or not. Sec. 1, Amendm. XIV, Const. of U. S.; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 532, 533, 90 N. W. 1098; *Borgnis v. Falk Co.* 147 Wis. 327, 373, 133 N. W. 209; *Ex parte Stricker,* 109 Fed. 145, 150; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357; *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255; Brannon, Fourteenth Amendment, 335, 343; *Johnson v. Goodyear M. Co.* 127 Cal. 4, 59 Pac. 304; 8 Cyc. 1076; *Randolph v. Builders & P. S. Co.* 106 Ala. 501, 17 South. 721; *Missouri v. Lewis,* 101 U. S. 22; *Durkee v. Janesville,* 28 Wis. 464; *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128; *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561.

VINJE, J.   Plaintiff's theory upon which the complaint is based is thus tersely stated by his counsel:

"When a sovereign state departs from its ordinary political and police duties by entering upon the exercise of functions at the most only of a *quasi*-public character and succeeds to private rights through grants, under which a citizen suffers damage resulting from the wrongful act of the agents of the state, which, if committed by the state's predecessor in title, would have caused liability, such act causes like liability upon the state, subject only to the inability of the person damnified to commence suit, but upon that permission being granted the liability of the state is to be governed by the same rules which would be applicable to private parties."

This statement is followed by calling attention to the importance of the question raised in view of the modern tendency of many states to depart from the settled and historic lines of public activities and to enter upon those heretofore committed to corporate or personal initiative.   The question of the equity of the state claiming exemption from liability for torts committed by its officers or agents is then discussed at length in an able and convincing manner, and attention is called to many cases in which states, notably New York, have by legislative enactments made themselves liable for the tortious conduct of their servants or agents in the conduct of certain enterprises—especially canals.   To these may be added our Workmen's Compensation Act, sec. 2394—4, Stats. 1913, whereby the state makes itself respond in damages for injuries to the servants in its employ.

Were the question of liability of the state for an injury like the one under consideration to be decided for the first time in accordance with ordinary principles of equity it may well be that the action would be sustained.   But the question is not an open one in our state.   Municipalities, as well as the state itself, have long been held immune from liability for the tortious acts of their agents and officers while engaged in the discharge of a governmental function.   *Kelley v. Milwau-*

*kee,* 18 Wis. 83; *Hayes v. Oshkosh,* 33 Wis. 314; *Wallace v. Menasha,* 48 Wis. 79, 4 N. W. 101; *Schultz v. Milwaukee,* 49 Wis. 254, 5 N. W. 342; *Little v. Madison,* 49 Wis. 605, 6 N. W. 249; *Crandon v. Forest Co.* 91 Wis. 239, 64 N. W. 847; *Kuehn v. Milwaukee,* 92 Wis. 263, 65 N. W. 1030; *Houston v. State,* 98 Wis. 481, 74 N. W. 111; *Kempster v. Milwaukee,* 103 Wis. 421, 79 N. W. 411; *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420; *Lowe v. Conroy,* 120 Wis. 151, 97 N. W. 942; *Manske v. Milwaukee,* 123 Wis. 172, 101 N. W. 377; *Higgins v. Superior,* 134 Wis. 264, 114 N. W. 490; *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265; *Bruhnke v. La Crosse,* 155 Wis. 485, 144 N. W. 1100; *Engel v. Milwaukee,* 158 Wis. 480, 149 N. W. 141; *Bernstein v. Milwaukee,* 158 Wis. 576, 149 N. W. 382. In view of the long unbroken line of decisions in our own state it is needless to go elsewhere for authority. Were it needed, reference may be had to the long list of cases cited by the attorney general and incorporated by the reporter in his synopsis of the state's brief.

Counsel for plaintiff argues that the propagation of fish by the state is at best a *quasi*-public function and not a governmental one. In this we are unable to concur. It is undertaken and carried on for the general welfare of the people of the state. No profit accrues directly to the state as a sovereignty from its engaging therein. On the contrary, public expense is connected therewith that can be justified only on the ground of a general public benefit. This state and many others, as well as the sovereigns of most civilized countries, have from time immemorial exercised full jurisdiction and control over fish and game. The right of the people of this state to enjoy the full benefit of both in or over public waters has been fully vindicated in *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273, and in *Diana S. Club v. Husting,* 156 Wis. 261, 145 N. W. 816. So it must be considered that the state was engaged in a governmental function in conducting

the fish hatchery and hence not liable for the negligence of its officers, the fisheries commission. Whether it would be liable if the propagation of fish were considered a proprietary instead of a governmental enterprise need not be decided, and that question is expressly reserved for future consideration.

Ch. 624 of the Laws of 1913, which authorizes the bringing of this suit, reads as follows:

"Section 1. Authority is hereby given to *George Apfelbacher,* of the town of Summit, Waukesha county, *Wisconsin,* to bring suit in such court or courts and in such form or forms as he may be advised for the purpose of settling and determining all controversies which he may now have with the state of *Wisconsin,* or its duly authorized officers and agents, relative to the mill property of said *George Apfelbacher,* the fish hatchery of the state of *Wisconsin* on the Bark river, and the mill property of *Evan Humphrey* at the lower end of Nagawicka Lake, and relative to the use of the waters of said Bark river and Nagawicka Lake, all in the county of Waukesha, *Wisconsin.*"

Plaintiff claims that by the enactment of this law the legislature admitted liability on the part of the state for the acts of its officers and that the suit now stands just as it would stand between private parties. It is difficult to see how the act does or was intended to do more than remove the state's immunity from suit. It simply gives authority to commence suit for the purpose of settling plaintiff's controversies with the state. Nowhere in the act is there a whisper or suggestion that the court or courts in the disposition of the suit shall depart from well established principles of law, or that the amount of damages is the only question to be settled. The act opened the door of the court to the plaintiff. It did not pass upon the question of liability, but left the suit just where it would be in the absence of the state's immunity from suit. If the legislature had intended to change the rule that obtained in this state so long and to declare liability on the part of the state, it would not have left so important a matter to

mere inference, but would have done so in express terms. *Murdock P. G. Co. v. Comm.* 152 Mass. 28, 24 N. E. 854.

That nonliability for torts arising out of the prosecution of governmental functions is based upon grounds of public policy distinct from the immunity of the sovereign from suit is apparent from the fact that such nonliability is invoked in favor of municipalities subject to suit by private parties.    No doubt such policy may originally have sprung in a large measure from the conception that the sovereign can do no wrong, but it has a more modern and tangible basis upon which to rest.    The doctrine of *respondeat superior,* while an ancient one in English law, is not one that rests upon direct primary principles of justice.    These principles require that the person actually committing the wrong should alone respond in damages.    The doctrine rests rather upon secondary principles deduced from primary conceptions of justice.    It rests upon the idea that where an enterprise is carried on for the financial benefit of a master it is considered just that he should answer for the tort of his servant in conducting it because he is deemed to profit financially by its being carried on.    For the same reason municipalities carrying on proprietary enterprises for gain, as for instance the sale of water to its inhabitants, are held to respond in damages for the tort of their servants in so doing (*State Journal P. Co. v. Madison,* 148 Wis. 396, 134 N. W. 909), while if they act in a governmental capacity where there is no question of financial profit but only a service rendered for the general welfare of its inhabitants, as the maintenance of a public playground, there is no liability for the negligence of its agents.    *Bernstein v. Milwaukee,* 158 Wis. 576, 149 N. W. 382.    So it will be observed that the doctrine of *respondeat superior* has by courts been applied to public subdivisions of the state only in those cases where the municipality has been engaged in a proprietary enterprise which may or does result in a financial benefit.    The legislature from time to time has made exceptions

to this rule, notably in the case of liability of towns and cities for defective highways. Whether further exceptions are desirable is a question of legislative policy and not a matter of judicial construction.

A denial of the application of the doctrine of *respondeat superior* to the state when exercising a governmental function does not leave a person injured remediless. He has his cause of action against the person or persons actually committing the wrong. *Morrison v. Fisher, post,* p. 621, 152 N. W. 475. It merely refuses to extend the master's liability to cases where he does not profit by the enterprise he is engaged in, leaving the injured party free to prosecute his suit against the person or persons who actually committed the tort. In the instant case the state and the commissioners of fisheries in their official capacity only are sued. No attempt is made to charge them with liability as individuals.

The attorney general argues that ch. 624, Laws of 1913, is unconstitutional because it contravenes sec. 1 of the Fourteenth Amendment to the constitution of the United States, which provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." This act it is claimed grants to plaintiff a special privilege, namely, that of the right to sue the state—a privilege not common to all its creditors except such as come under the provisions of sec. 3200, Stats. 1913. It is conceded by both parties that under the rule announced in *Houston v. State,* 98 Wis. 481, 74 N. W. 111, the present case is not covered by sec. 3200, as that does not include demands based upon the tortious acts of agents or officers of the state.

As has already been held, this act does not enlarge the plaintiff's claim in any manner. The rights which he has flowed from the common law and not from this act. It merely removed the bar to suit from the state—permitting plaintiff

to assert against it whatever rights he had,—there being nothing added to such rights by the act itself. Waiver of immunity from suit by a state, in such cases as the legislature may deem proper, cannot be held to be a denial of the equal protection of the laws to persons within its jurisdiction. The immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. No constitutional right of its residents is violated whatever its action in that regard may be. The state has power to settle claims against it by process in court pursuant to sec. 27, art. IV, of the constitution, which provides that "The legislature shall direct by law in what manner and in what courts suits may be brought against the state," by direct legislative appropriation, as is often done, or by special leave granted as in this case. The provisions of the federal constitution quoted were not intended to hamper or circumscribe the manner in which a state should adjust claims against it. As bearing upon this question see *Comm. v. Jackson,* 5 Bush (Ky.) 680; *Comm. v. Haly,* 106 Ky. 716, 51 S. W. 430; and *Carter v. Louisiana,* 49 La. Ann. 1487, 22 South. 400.

*By the Court.*—Judgment affirmed.

BARNES and KERWIN, JJ., dissent.