CITY OF MILWAUKEE, Appellant, vs. MEYER and others, Respondents.

*March 10—April 7, 1931.*

For the appellant there was a brief by *John M. Niven,* city attorney, and *Andrew W. Brunhart,* assistant city attorney, and oral argument by *Mr. Brunhart.*

For the respondents there was a brief by *Stover & Stover* of Milwaukee, and oral argument by *Harney B. Stover.*

OWEN, J. Plaintiff brings this action to recover damages sustained by the Sixth street bridge and viaduct, built and maintained by the city of Milwaukee over and across the Menomonee river in said city. The damage resulted when the steamship "B. F. Jones" ran into or collided with the abutment of said bridge. Certain of the defendants who were charged with responsibility in the matter of maneuvering the steamship through the bridge were found guilty of negligence by the jury, which negligence, the jury also found, constituted a cause of the collision. The jury further found that certain negligent conduct on the part of the harbor-master of the city of Milwaukee contributed to produce the collision in question. Because of the contributory negligence of the harbor-master, judgment was rendered in favor of the defendants. The alleged negligence of the harbor-master consisted in mooring a scow at a point below the bridge where it interfered with the movements of a tug

so as to prevent its proper operation in order to maneuver the steamship through the bridge.

Sec. 8 of an ordinance of the city of Milwaukee, passed July 6, 1909, provides as follows:

"Section 8. No vessel, craft or float shall be laid up in any part of the North Menomonee canal during the season of navigation; and no vessel, craft or float consigned to a dock in said canal shall go west of the ship-yard at the so-called Sixth street bridge until her dock is ready to receive her and as soon as unloaded, if it be during the season of navigation, she shall immediately move out of the said canal."

It appears that a scow was moored at a point above the bridge where it interfered with navigation, and at the request of the owner of the steamship "B. F. Jones" the scow was removed by the harbor-master from its then location and moored at a point below the bridge where it interfered with the movements of the tug which was assisting the steamship through the bridge. The location of the scow was changed before the steamer "B. F. Jones" went up the river, and its presence at the changed location interfered with the maneuvering of the "B. F. Jones" through the bridge upon its return trip. It is conceded that at the time of the collision the scow was moored at a place where the ordinance prohibits vessels, crafts, and floats from being "laid up" in the North Menomonee canal.

It is contended that the harbor-master did not leave the scow where it was at the time of the collision, and that if it had remained where the harbor-master left it, it would not have interfered with the necessary movements of the tug. It is also contended that the scow was not "laid up" within the meaning of the ordinance, and, anyway, the ordinance was not intended to regulate the movement and conduct of the harbor-master; and lastly, it is contended that the negligence of the harbor-master is not imputable to the

city, and that his negligence cannot be invoked to bar the recovery of the city for the negligence of the defendants.

It is conceded that the work of the harbor-master was in the prosecution of a public or governmental function. It is conceded that the city would not be liable under the doctrine of *respondeat superior* for his negligent acts while so engaged. It is contended, however, that this is not a case in which recovery is sought against the city for the negligent acts of the harbor-master. In this case the city seeks recovery because of the negligent acts of the defendants, and it is claimed that the contributory negligence of the harbor-master bars such a recovery.

The rule is thoroughly established in this state that the doctrine of *respondeat superior* does not apply between the city and its officers or agents while they are engaged in the discharge of public or governmental functions. *Apfelbacher v. State,* 160 Wis. 565, 152 N. W. 144.

If it be conceded that the city is immune from damages resulting from the negligent acts of its harbor-master, it is difficult to see why the negligent acts of the harbor-master can be invoked by a tortfeasor to relieve it from liability to the city. If the negligence of the harbor-master is not in law the negligence of the city so as to make the city responsible for his negligence, it is difficult to see on what theory the negligence of the harbor-master can be held to be the negligence of the city so as to defeat its action for damages which it sustained by reason of the negligence of the defendants. In order to constitute the negligence of the harbor-master the negligence of the city, the relation of *respondeat superior* must obtain, and if it does not exist in the one instance it cannot in the other. If the city be not liable in favor of an injured party for the negligence of the harbor-master it should not be responsible for his negligence in favor of a tortfeasor. Granting in this case that the harbor-

master contributed to the collision, he is simply a joint tort-feasor with the defendants, and the defendants should not be permitted to plead his negligence in bar of a recovery by the city for the consequences of their tortious acts.

It has been held upon the best of authority that the government is not bound by laches of its officers with reference to the very matter constituting the subject of the action in which it seeks a recovery. *U. S. v. Kirkpatrick,* 9 Wheat. 720; *Dox v. Postmaster General,* 1 Pet. 318; *U. S. v. Vanzandt,* 11 Wheat. 184. The suggestion that the government should be barred by the negligence of its officers and agents seems quite analogous to the proposition that it should be bound by their laches. The same considerations which render it immune from the consequences of their laches should also relieve it from the bar of their contributory negligence. This is the conclusion reached in *Paterson v. Erie R. Co.* 78 N. J. L. 592, 75 Atl. 922, and clearly indicated in *Columbus R. Co. v. Columbus,* 29 Ga. App. 8, 113 S. E. 243, the only two cases called to our attention in which this question has been involved.

This conclusion renders unnecessary the consideration of other questions presented. The city was entitled to recover against those defendants found negligent by the verdict of the jury.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment in favor of the plaintiff upon the verdict of the jury.