HOUSTON vs. THE STATE.

*January 19 — February 8, 1898.*

*State veterinarian: Destruction of diseased animals: Liability of state for tort of officer.*

| | |
|---|---|
| 98 | 481i |
| 101 | 430 |

| | |
|---|---|
| 98 | 481 |
| s42 LRA | 39 |
| 47 LRA | 459n |
| 56 LRA | 329n |

1. The destruction of valuable cattle, free from any disease, by the state veterinarian under color of ch. 467, Laws of 1885, as amended by ch. 76, Laws of 1887 (authorizing the destruction of animals in

case they are affected with some "contagious or infectious disease of malignant or very fatal nature"), is unlawful and tortious.

2. Sec. 3200, R. S. 1878 (providing that "it shall be competent for any person deeming himself aggrieved by the refusal of the legislature to allow any just claim against the state, to commence an action against the state, by filing a complaint" with the clerk of the supreme court, etc.), relates only to claims which, if allowed, render the state a debtor to the claimant, and does not include a demand based upon unlawful and tortious acts of officers and agents of the state.

3. The legislature never having authorized an action against the state for unlawful and tortious acts of its officers or agents, no such action can be maintained.

ACTION commenced in supreme court. The defendant demurred to the complaint. *Demurrer sustained.*

This action was commenced in this court June 29, 1897. The amended complaint alleges, in effect, that during the time mentioned the plaintiff was a farmer, residing on his farm in the county of Kenosha; that he owned and had on the farm a standard herd of dairy cattle, consisting of sixty head of thoroughbred milch cows, Jerseys and Guernseys, and crosses of the thoroughbred cattle; that by ch. 467, Laws of 1885, as amended by ch. 76, Laws of 1887, provision was and is made for the appointment of a state veterinarian, whose duties are therein set forth; that under and by virtue of the said statutes the state assumed the right and power to invade the premises of any citizen of this state, and, by its officers and agents, to inspect the personal property of any citizen, and to destroy any property of any citizen, in certain cases and for certain purposes, as in the said laws specifically pointed out and designated, and for that purpose made provision for the appointment of a state veterinarian; that in November, 1895, one J. L. Scott was duly appointed and qualified, and, while acting as state veterinarian under and by virtue of the laws aforesaid, visited the premises of the plaintiff, as claimed by him, to inspect the herd of dairy cattle then owned by the plaintiff and kept on his farm, for

the purpose therein indicated; that after such inspection the state veterinarian informed the plaintiff that said herd looked to be in an excellent condition and entirely free from any disease of any kind whatever, but that, inasmuch as complaint had been made to him that some of the cattle were diseased, he had concluded that it was his duty to test the herd for tuberculosis, by applying and using the so-called tuberculine test; that December 5, 1895, the state veterinarian, in his official capacity, acting for the defendant by virtue of said laws, did, as claimed by him, apply severally to the individual animals composing the herd the so-called tuberculine test for tuberculosis, and as a result of the test the state veterinarian announced that thirty-eight of the animals were affected with tuberculosis, and did then and there, by virtue of the authority he claimed to exercise as the agent of the state, condemn said animals as diseased animals, under the aforesaid laws.

The complaint further alleges that thereafter the state veterinarian went before a justice of the peace in the town, and, in the form and in accordance with the rules prescribed by the statute in such case made and provided, did apply, on behalf of the state, for the appointment of appraisers of the thirty-eight head of cattle so condemned; that thereupon the justice, acting under the provisions of the law, and as agent of the state, appointed three appraisers of the cattle, who appraised the animals at $47 per head, amounting in the whole to $1,710; that said amount is very much less than the actual value of the animals; that the appraisers and officers and agents of the state found themselves, under and pursuant to said laws, charged with the duty, after appraising the cattle, of destroying or killing the cattle so condemned, and burning or burying the same; that no provision was or is made in the acts for paying the expenses thereby incurred; that the officers and agents of the state, to whom the said thirty-eight animals were delivered by the

plaintiff pursuant to the directions of the state veterinarian, caused two of them to be killed, and made a *post mortem* examination of the same, and shipped the other thirty-six head to Chicago, for the purpose of having them sent to a fertilizing establishment to be slaughtered and thus disposed of without cost and expense; that all of the proceedings herein related were made by and under the direction of the state veterinarian, acting for the state in pursuance of its laws, by virtue of which the state assumed the right and power to do the acts herein complained of, and the plaintiff surrendered control of the animals to the said veterinarian and the other officers of the law, as he supposed it to be his duty to do.

The complaint also alleged that the thirty-eight head of cattle so taken from the plaintiff and appropriated by the state for its uses and purposes, were strong, healthy, and in fine condition, and on the plaintiff's premises were of the value of $5,000 and upwards; that the two so slaughtered on the plaintiff's premises were, at a *post mortem* examination made by competent persons, found free from disease of any kind or nature; that as a matter of fact, no adequate test had been or was made; that none of the animals were afflicted with disease at the time they were condemned, but were at that time entirely free from disease, and healthy, strong, and vigorous animals; that the killing of animals affected with tuberculosis is not according to the most modern methods of treatment of such diseases; that the condemnation and destruction of the cattle at the time and in the manner aforesaid was wholly unnecessary as a matter of reasonable precaution to prevent the spread of disease, and a great and unnecessary waste of property; that this fact was unknown to the plaintiff until after such destruction.

It was also alleged that the plaintiff caused due and timely application to be made to the legislature, at the session thereof beginning in January, 1897, for relief, and payment to the

plaintiff of compensation for damages thereby suffered, but that the legislature neglected and refused to give the plaintiff any pay or compensation whatever for such damages; that the plaintiff has no remedy in the premises for the damages inflicted, except as against the state, since none of said officers were required to give bonds to indemnify persons suffering injury or loss as a result of their action when so acting, and all of those who conducted the proceedings herein are unable to respond in damages; that the damages suffered by the plaintiff by reason of such destruction exceed $5,000; that the thirty-six animals condemned and shipped to Chicago were not sent to the fertilizing establishment, but were sent to the regular market, and sold in the regular way, and examined by United States government inspectors in Chicago, who found the animals to be free and clear from all diseases whatever,— which fact was unknown to the plaintiff until recently, and since the presentation of his claim to the legislature; that none of the animals so condemned and destroyed were afflicted with any disease whatever, but were all sound and in good health, and of great value, at the time; that the acts of the state, the legislature, the veterinarian, and all of the officers acting for and in behalf of the state, clothed with such authority, wrongfully deprived the plaintiff of his property without due process of law, and without compensation, and in violation of sec. 13, art. I, of the constitution of Wisconsin, and in violation of the rights guaranteed to the plaintiff by the fourteenth amendment of the constitution of the United States, to his damage in the sum of $5,000, for which judgment is demanded.

To such complaint the defendant demurred upon the grounds (1) that the plaintiff has no legal capacity to sue; (2) that the complaint does not state facts sufficient to constitute a cause of action.

*Charles E. Estabrook,* for the plaintiff.

Houston vs. The State.

For the defendant there were separate briefs by the *Attorney General* and *John L. Erdall*, first assistant attorney general, and oral argument by *Mr. L. J. Billings* and *Mr. Erdall*.

CASSODAY, C. J.    It is not specifically alleged that the plaintiff accepted the two thirds of $1,710, at which the cattle so destroyed were appraised; but such acceptance, under the circumstances alleged, may be fairly inferred, and in fact seemed to be conceded on the argument.  The view we have taken of the case, however, makes it unimportant.

It is fairly established, by adjudications too numerous to mention, that a state may, in the proper exercise of its police power, authorize the destruction of such property as has become a public nuisance, or has an unlawful existence, or is noxious to the public health, public morals, or public safety, without compensation, notwithstanding the prohibition in sec. 1, art. XIV, of the amendments to the constitution of the United States.  *Bittenhaus v. Johnston*, 92 Wis. 596–598; *Mugler v. Kansas*, 123 U. S. 623; *Kidd v. Pearson*, 128 U. S. 1; *Lawton v. Steele*, 119 N. Y. 226; *S. C.*, affirmed, 152 U. S. 133.    The question of such power, however, does not here arise.   The demurrer admits the facts alleged in the complaint.    The complaint alleges that none of the cattle destroyed were affected with any disease at the time they were condemned; but were each and all entirely free from any disease, and healthy, strong, and vigorous animals.   The statute only authorized the destruction of animals in case they were affected with some " contagious or infectious disease of malignant or very fatal nature."    S. & B. Ann. Stats. sec. 1492*a*.    Unless the animals were so diseased in fact, their slaughter was without authority of law, and hence tortious.  *Pearson v. Zehr*, 138 Ill. 48; *Miller v. Horton*, 152 Mass. 540.

The question recurs whether this suit can be maintained against the state for the injury sustained for such alleged

unlawful destruction.    Prior to the eleventh amendment to
the constitution of the United States, it was held, in effect,
that a state might be sued in the supreme court of the
United States by an individual citizen of another state.
*Chisholm v. Georgia,* 2 Dall. 419.    But since that amend-
ment, it is believed, the courts have uniformly held that no
state could be sued in any court without its express consent
*Louisiana v. Jumel,* 107 U. S. 711; *Chicago, M. & St. P. R.
Co. v. State,* 53 Wis. 509.    The same is true of the United
States.    *Schillinger v. U. S.* 155 U. S. 163; *U. S. v. North
Carolina,* 136 U. S. 211; *State v. Hill,* 54 Ala. 67; *Clark v.
State,* 7 Coldw. 306; *Railroad Co. v. Alabama,* 101 U. S.
832.    Our constitution expressly provides that " the legisla-
ture shall direct by law in what manner and in what courts
suits may be brought against the state."    Const. Wis. art.
IV, sec. 27.    In pursuance of that provision, the legislature
at an early day provided that " it shall be competent for
any person, deeming himself aggrieved by the refusal of the
legislature to allow any just claim against the state, to com-
mence an action against the state, by filing a complaint, set-
ting forth fully and particularly the nature of such claim,
with the clerk of the supreme court, either in term time or
in vacation."    R. S. 1878, sec. 3200.    This section only re-
lates to claims which, if allowed, render the state a debtor
to the claimant.    *Chicago, M. & St. P. R. Co. v. State,* 53 Wis.
509; *Clodfelter v. State,* 86 N. C. 51; *State v. Hill, supra.*
This statute does not include a demand based upon the un-
lawful and tortious acts of officers or agents of the state.
*Hill v. U. S.* 149 U. S. 593.    Thus, in Massachusetts it is
held that a similar statute did " not extend to a claim for
damages resulting from the misfeasance or negligence of
its officers and agents in performing their duties."    *Mur-
dock Parlor Grate Co. v. Comm.* 152 Mass. 28.    The same
construction of the word " claim " has been applied by this
court to demands against municipalities.    *Kelley v. Madi-*

*son,* 43 Wis. 638; *Bradley v. Eau Claire,* 56 Wis. 168; *Jung v. Stevens Point,* 74 Wis. 547; *Sommers v. Marshfield,* 90 Wis. 59. The law is well established that neither the state nor the United States is answerable in damages to an individual for an injury resulting from the alleged misconduct or negligence or tortious acts of its officers or agents. *Gibbons v. U. S.* 8 Wall. 269; *Langford v. U. S.* 101 U. S. 341; *German Bank of Memphis v. U. S.* 148 U. S. 573; *Clark v. State,* 7 Coldw. 306.

It follows from what has been said that this action for the alleged unlawful and tortious action of the officers and agents of the state cannot be maintained against the state, for the simple reason that the legislature has never authorized an action in this court for such misconduct.

*By the Court.*— The demurrer is sustained, with leave to amend within twenty days, and in case of default the complaint will be dismissed.