FORSETH, Appellant, v. SWEET and another, Defendants:
STATE, Respondent.

*April 8—May 7, 1968.*

678

For the appellant there was a brief by *Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson* and *Mr. Stanley Gabert* of Appleton.

For the respondent the cause was argued by *Albert Harriman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The appellant's principal argument (conceding, arguendo, the right of the state to preserve its immunity from suit) is simply that the legislature has in fact spelled out a method or procedure for suing the state. For the purpose of this argument, the appellant concedes that art. IV, sec. 27, is not self-executing, but she contends that the legislature has implemented it. That section of the constitution provides:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

Appellant starts also from the premise, admittedly correct since *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, that there is *substantive* liability imposed upon the state when its agents, in the course of their employment, commit a tort. She then points to various procedural statutes which set forth the method to be used to obtain service upon the state. For example,

she points to sec. 262.06 (3), Stats., for the proposition that:

"A court . . . may exercise personal jurisdiction over a defendant by service of a summons as follows: . . . (3) State. Upon the state, by delivering a copy of the summons and of the complaint to the attorney general . . . ."

Sec. 270.58, Stats.,[1] she contends, completes the legislative pattern that allows suit against the sovereign. The essence of this statute is that, when a judge or jury concludes that the agent of either a municipal corporation or of the state is liable and there is a finding that the conduct was in good faith, the judgment taken against the officer or employee must be paid by his employer—whether it be a minor public subdivision or the state itself.

Appellant thus finds in the *Holytz Case* substantive liability; in sec. 270.58, Stats., the legislative expression of willingness for the state to be subject to the payment of damages occasioned by its agents' torts; and in the procedural statutes, a method of service. She concedes, however, that there is no statute that expressly waives the constitutional requirement of consent to suit. This

---

[1] "270.58 **State and political subdivisions thereof to pay judgments taken against officers.** (1) Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in his official capacity or is proceeded against as an individual because of acts committed while carrying out his duties as an officer or employe and the jury or the court finds that he acted in good faith the judgment as to damages and costs entered against the officer or employe shall be paid by the state or political subdivision of which he is an officer or employe. Regardless of the results of the litigation the governmental unit shall pay reasonable attorney's fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act in good faith, when it does not provide legal counsel to the defendant officer or employe. . . ."

This statute was amended by ch. 603, Laws of 1965, to include, *inter alia*, "employes" in addition to "public officers."

deficiency she supplies by contending that to subject the state to liability without being joined in the suit is unconstitutional; and, hence, to preserve the constitutionality of the statutory scheme, the state must be considered an indispensable party, whose joinder can be compelled. We find in this argument even a kernel of solace for the state itself, for appellant contends, with evident sincerity, that the deprivation of the state's right to appear and defend would make it impossible to exercise any control over settlement negotiations and subsequent litigation.

We are not convinced that the state is substantially injured thereby, but we agree with counsel that the state is placed in an anomalous position when, by sec. 270.58, Stats., it accepts the responsibility for the results of a lawsuit against one of its agents as to attorney fees, costs, and the judgment itself; yet it has no voice in the selection of the attorney, or an opportunity to control the strategy of either a settlement or a trial. We do not accept the appellant's conclusion, however, that the awkward hiatus thus created by the legislature authorizes us to decide that the state may be sued directly in the action, but the situation thus presented does lead us to conclude that possibly there was a failure to appreciate the potential exposure to liability that was to flow from the 1965 amendment that included the state in sec. 270.58 as a backstop for any judgment that might be taken against its tortiously culpable employees.

A review of the legislative history [2] of the bill indicates that at least some members of the legislature felt

[2] It is a cardinal rule of statutory construction that no reference to legislative history can be had when a statute is clear and unambiguous. *Miller v. Wadkins* (1966), 31 Wis. 2d 281, 142 N. W. 2d 855. Moreover, we have said that ". . . the language of sec. 270.58, Stats., is plain and unambiguous and requires no construction." *Larson v. Lester* (1951), 259 Wis. 440, 446, 49 N. W. 2d 414. However, since this assertion was made prior to the 1965 amendment and not in the context of whether sec. 270.58 could be

that no more than liability for costs and attorney fees would result from the passage of the amendment.[3] The drafting record in the legislative reference library bears the notation of the purpose of the legislation as envisaged by the draftsmen as the "State Payments of Legal Fees Incurred by its Employees." The "fiscal note" attached to the 1965 amendment estimated the costs, if the bill were passed, at $10,000 to $15,000 per biennium. Apparently, not even the exposure to judgment was considered in the fiscal note. It thus seems unrealistic to conclude that the legislature by this amendment authorized suit against the state. No new exposure to substantive liability was contemplated by this statute.

Were sec. 270.58, Stats., the only legislation that dealt with the state's concern for the tortious acts of its employees, it could be argued that the purpose of that statute was to allow direct suit. We are in no such legislative vacuum. Other legislation, together with the judicial interpretation of that legislation, makes the contention of the appellant untenable.

The legislature in 1850 first enacted a procedure permitting the processing of "claims" against the state. Chapter 249 of the laws of that year permitted a person aggrieved by the legislature's refusal "to allow any just claim against the state, to exhibit and file . . . a bill in chancery . . . with the clerk of the supreme court . . . ."

This procedure, although modified in the course of one hundred twenty years of Wisconsin's history, remains in substance as sec. 285.01, Stats. The original statute was, in *Houston v. State* (1898), 98 Wis. 481, 488, 74 N. W. 111, construed to limit the right to sue the state

interpreted as legislative "consent to suit," we consider the above quoted "ambiguity rule" inapplicable.

[3] In addition to the inclusion of "employes," ch. 603, Laws of 1965, also provided for the payment of costs and attorney fees, provided the officer or employee acted in good faith.

only when the right was that of a creditor asserting a debt owed by the state. In *Houston* a state veterinarian had negligently tested milk cows for tuberculosis and ordered their destruction. After they were condemned and sold at a nominal price, it was discovered that the veterinarian had condemned healthy animals. Our court, however, referring to the laws of 1850, stated at page 487: "This statute does not include a demand based upon the unlawful and tortious acts of officers or agents of the state." The *Houston Case* rests in part upon the fact that there is no substantive liability upon the state, a position since modified in *Holytz*, but a careful reading of the case makes it clear that the decision was primarily based upon the failure of the legislature to provide a *procedure* for suit. The *Houston Case* concludes with these words, at page 488:

". . . this action for the alleged unlawful and tortious action of the officers and agents of the state cannot be maintained against the state, for the simple reason that the legislature has never authorized an action in this court for such misconduct."

The legislature has acquiesced, by nonaction, in this interpretation for seventy years. It has never indicated that the court's interpretation in *Houston* was not consonant with the legislative intent. In view of the acceptance of the *Houston Case*, it would be doubtful indeed if the legislature were to reverse seventy years of consistent statutory construction disallowing a direct suit against the state by as obscure and devious a method as the appellant claims is effected by sec. 270.58, Stats.[4]

This court has already held that the mere creation of substantive liability did not suffice to pierce the legis-

---

[4] Also noteworthy are secs. 114.065 and 345.05, Stats., which authorize suits against the state for certain types of tortious conduct.

latively controlled barrier against suit. In *Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163, it was contended that the legislature gave its consent to suit when it included the state as an "owner" under the safe-place statute. This court then held that, though the inclusion of the state as an owner established a standard of care whose breach would be negligence, nevertheless, in the absence of a consent to sue, there could be no cause of action against the state. In so concluding, the court followed *Houston, supra.*

It is thus apparent that prior to *Holytz* there were two reasons for the state's immunity from suit: (1) The sovereign immunity of "the king can do no wrong," implemented by denying the doctrine of *respondeat superior* where an agent of the state was guilty of tortious conduct, and (2) the lack of a procedural implementation of the constitutional admonition that "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." *Holytz* removed only the first barrier, since *Holytz* concerned only the immunity of a municipal corporation, whose liability to suit was unquestioned. The municipal immunity was not from suit but from liability for the tortious acts of its agents. The state's immunity has the additional barrier that an unconsented suit (in absence of legislative direction) is a nullity.

We conclude that *Holzworth* may properly be interpreted as holding that the mere labelling of the conduct of the state as negligent, thus creating some aura of substantive liability, does not in any way imply that the legislature has waived its immunity from suit or given legislative consent for an action against the state.

Appellant would analogize the right to join a municipal corporation in an action, as approved in *Larson v. Lester* (1951), 259 Wis. 440, 49 N. W. 2d 414, and concludes that, since the state is now included in sec. 270.58, Stats.,

identical treatment is warranted. This argument overlooks the dual nature of the state's immunity. Since a municipal body has always been subject to suit, the entire barrier of immunity crumbled when it was concluded that there was substantive liability under sec. 270.58 as well as under *Holytz*. However, the state's barrier of immunity from suit is unaffected by *Holytz* and the statute cited by the appellant.[5] We thus conclude that *Larson* and other cases relating to municipal corporations fail to reach the problem of state immunity from suit as contrasted to immunity from substantive liability.

Bill No. 4, S., introduced in the legislature in 1967 should also be noted. This bill would have given a broad consent to directly sue the state in tort. In the instant case appellant could postulate that the bill failed of passage because the right to sue the state already existed by virtue of sec. 270.58, Stats. However, if that were true, and we herein hold that it was not, we doubt that its rejection for that reason would have escaped our attention. Rather, we conclude that the legislature has undertaken no action to overrule *Houston*.[6]

After considering appellant's arguments *in extenso*, we find no statutory pattern that would lead us to conclude that the legislature has expressly or impliedly acted under art. IV, sec. 27, to direct in what manner and in what courts suits may be brought against the state.

---

[5] "Henceforward, there will be substantive liability on the part of the state, but the right to sue the state is subject to sec. 27, art. IV of the Wisconsin constitution which provides: 'The legislature shall direct by law in what manner and in what courts suits may be brought against the state.' The decision in the case at bar removes the state's defense of nonliability for torts, but it has no effect upon the state's sovereign right under the constitution to be sued only upon its consent." *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 41, 115 N. W. 2d 618.

[6] For a comprehensive analysis of Bill No. 4, S. (1967), and for an excellent discussion of sec. 270.58, Stats., see 1 Wis. Student Bar Journal (1967), 1.

*Does the appellant have a constitutional
right to sue the state*

Appellant, although claiming that the statutory pattern evinces a legislative consent to suit, in addition claims that the legislature has no right to withhold that consent, if it in fact has done so.

This claim is based upon the due-process clause of the Wisconsin Constitution, art. I, sec. 1, and one of the requisites of due process is the right to have a grievance heard. Appellant cites *Ocean Accident & Guarantee Corp. v. Poulsen* (1943), 244 Wis. 286, 295, 12 N. W. 2d 129, for the proposition, "The essentials of due process are notice and an opportunity to be heard before a tribunal having jurisdiction of the cause [citing case]."

Reliance, however, is placed upon art. I, sec. 9, of the Wisconsin Constitution, providing:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

With great persuasiveness, appellant also contends that the constitutional charge—"The legislature shall direct by law in what manner and in what courts suits may be brought against the state"—is mandatory upon the legislature and should be enforced by this court.

This is not a case of first impression. The argument, though its persuasiveness was recognized by the court in *Chicago, M. & St. P. Ry. v. State* in 1881 (53 Wis. 509, 513, 10 N. W. 560), was first rejected in *Bull v. Conroe* (1860), 13 Wis. 260 (*233). This court writing in the *Chicago M. & St. P. Ry. Case* said:

"The mandate contained therein is to the legislature to direct by law how and in what courts suits may be brought against the state. It may be, as the learned

counsel for the plaintiff very forcibly argued, that the object and purpose of the provision was to give a remedy against the state for any actual or threatened wrong, as broadly as the law gives a remedy against an individual for the same cause. Yet the provision calls for the interposition of the legislature to make the right available. It is not self-executing, and manifestly was not so intended. Otherwise, the mandate would have been to the courts instead of the legislature, and the consent of the state to be sued for the same causes which would support actions against individual citizens, would have been expressly given. We are of the opinion, therefore, that an action of any kind directly against the state cannot be maintained in this or any other court, unless it is authorized by some statute of the state.

"This is no new doctrine in this court. In *Bull v. Conroe*, 13 Wis., 233, the court had under consideration the clause of the constitution which ordains that 'the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted.' Const., art. I, sec. 17. It was substantially held in that case that, should the legislature fail to obey the mandate of that clause, the courts cannot supply the deficiency; in other words, that such failure would be a wrong for which there is no judicial remedy. The case seems to be precisely in point on the question here involved."

However, this court in *State ex rel. Reynolds v. Zimmerman* (1964), 22 Wis. 2d 544, 126 N. W. 2d 551, has seen fit to step in to compel the legislative performance of the constitutional mandate to apportion the legislature after each census. It is argued from this that this court has the power to protect the constitutional rights of Wisconsin's citizens by supplying the procedure that the legislature has failed to establish. Recently, in *Outagamie County v. Smith*, ante, pp. 24, 41, 155 N. W. 2d 639, we said:

"This court will not interfere with the conduct of legislative affairs in the absence of a constitutional mandate to do so or unless either its procedure or end

result constitutes a deprivation of constitutionally guaranteed rights."

If a constitutional mandate exists in art. IV, sec. 27, it is a mandate directed to the legislature and not to the courts. We have, however, acted when the legislature ignored a mandate directed to it, *e.g., Reynolds, supra,* where the legislature failed to follow the mandate that after each enumeration it "shall apportion . . . according to the number of inhabitants." There, we pointed out that we were concerned not merely with apportionment *per se,* but with constitutional infirmities that would affect our entire governmental system were the legislature to be not apportioned. Our system of representative democracy would be a sham if our representatives in the legislature did not in fact represent the people "according to the number of inhabitants." We said, "The apportionment of both houses of the legislature is vital to the functioning of our government." *Reynolds, supra,* page 557. It is obvious that fundamental rights were jeopardized when the legislature failed to act.

We see no such threat to constitutional government here. There is no "right" of a citizen to hold his sovereign substantively liable for a tort. We recognized in *Holytz* that it was in the interests of justice and equitable public policy to impose liability on municipal corporations and upon the state. We therein, however, recognized that the disability that we renounced had been court created. The sovereign prerogative to be immune from substantive liability as well as suit was not touched by the overthrow of precedent in *Holytz.* We said in *Holytz,* at page 40:

"If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort."

The legislature is thus free to re-immunize the state from any tort liability whatsoever. That it considers such a re-immunization contrary to public policy is evident in its failure to act since *Holytz*.[7]

In *Apfelbacher v. State* (1915), 160 Wis. 565, 577, 152 N. W. 144, we stated:

"Waiver of immunity from suit by a state, in such cases as the legislature may deem proper, cannot be held to be a denial of the equal protection of the laws to persons within its jurisdiction. The immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. No constitutional right of its residents is violated whatever its action in that regard may be."

It is thus apparent that the legislature has the power to secure, by proper legislation, both substantive immunity and freedom from suit. While we can agree with the appellant that the legislature has been remiss in its failure to implement art. IV, sec. 27, the fact that that body has the absolute right to proscribe the boundaries of its sovereign immunity should preclude intervention by the judiciary.

It should also be noted that art. IV, sec. 27, although mandatory in tenor, is in fact highly discretionary. Although it directs the exercise of legislative power, that power is to be exercised according to legislative discretion. It is left to the legislature to direct in *what manner* and in *what courts* suits may be brought.

In the reapportionment cases, though the problem had been denominated as a "political thicket," the mandate of the constitution was clear—apportionment was to be "according to the number of inhabitants." The "one-man one-vote principle" was a simple mathematical equivalent of the constitutional standard that left no room for doubt.

---

[7] The legislature, although failing to reinstate immunity, established a damage limit of $25,000. Sec. 895.43, Stats.

Such is not the case here. We see neither a clear constitutional mandate to this court to act, nor, if we were to act, clearly enforceable constitutional guidelines that exist independently of the legislative discretion. We decline to so act.

This court has made the public policy decision in *Holytz* that it is in the interest of justice to abolish the court-made rule of sovereign immunity. Similar factors are pertinent here; but the rule the appellant seeks to abolish is not court made but constitutional, and its viability rests upon the legislative discretion. It is apparent that the present statutory structure gives the state scant protection, for by sec. 270.58, Stats., it has made itself fully liable for a judgment when it has no right to control the litigation leading to the judgment. The present system imposes great handicaps upon the legal officers of the state in defending the treasury, while leaving the treasury exposed to liability. A plaintiff, while he may seek to have his judgment paid by the state after verdict, is unable to negotiate a settlement or deal with the state until after judgment, for until then the state has no legal responsibility and no authority to bargain. Nor does the plaintiff have what Judge PARNELL referred to in his memorandum decision as "the questionable psychological advantage of having the State a party." It would appear that this exclusion of one of the real parties in interest is conducive to uncertainty and unnecessary litigation. These matters, although they involve the orderly administration of justice and the transaction of business in the courts and therefore are of concern to this court, must be resolved by the legislature.

*By the Court.*—Order affirmed.