TOWNSEND, Respondent, v. WISCONSIN DESERT HORSE ASSOCIATION, INC., and others, Defendants: WISCONSIN EXPOSITION DEPARTMENT and another, Appellants.

*No. 171. Argued March 4, 1969.—Decided May 6, 1969.*
(Also reported in 167 N. W. 2d 425.)

416

For the defendants-appellants Wisconsin Exposition Department and the State of Wisconsin there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and *Bronson C. La Follette*, attorney general, and *Theodore L. Priebe*, assistant attorney general, and oral argument by *James T. Murray* and *Theodore L. Priebe*.

For the plaintiff-respondent on the principal appeal there was a brief by *Edward P. Rudolph*, and oral argument by *Mr. Rudolph* and *Mr. Wayne Van Ert*, both of Milwaukee.

For the defendant General Insurance Company of America on its cross appeal there was a brief by *Arnold, Murray & O'Neill*, and oral argument by *James T. Murray*.

In reply to the cross appeal there was a brief for plaintiff-respondent by *Edward P. Rudolph*, and oral argument by *Mr. Rudolph* and *Mr. Wayne Van Ert*.

HALLOWS, C. J. The basic questions raised on the appeal by the state and the department are: (1) Is sec. 285.01, Stats., an enabling statute which permits a tort action to be brought against the state; (2) does sec. 895.43 permit a tort action to be brought against the state; and (3) is the nature of the department such that it is *sui juris* and may be sued independently of secs. 285.01 and 895.43?

### 1. *The nature of sec. 285.01, Stats.*

The trial court in denying the motion for summary judgment took the view that sec. 285.01, Stats., was an enabling statute which provided a means by which a

tort action might be brought against the state and constituted a consent to be sued and a waiver of its sovereign immunity embodied in art. IV, sec. 27 of the Wisconsin Constitution.

It is argued the case law interpreting this section really meant that the section enabled or authorized a suit to be brought against the state in all cases where the state was substantively liable for such claim and as a procedural statute should apply to include new situations. We do not agree. This section [1] and its predecessor have been in existence since ch. 249, Laws of 1850, was enacted and has been construed many times by this court. It is more than a procedural statute; it constitutes a consent by the state to be sued. As a consent to be sued, this court has given a limited construction to this statute based upon what it considered the legislature's intent to be at the time of its enactment in light of what was then considered to be the practical liability of the state. At the time of its enactment the legislature knew that at common law the state had a court-created defense of immunity to tort liability. Whether this doctrine of governmental tort immunity is considered as a defense to an existing liability and thus procedural or as abrogating the existence of a cause of action for tort and thus substantive was not important for the purpose of the construction of sec. 285.01, Stats. Nor is it important the tort immunity doctrine rested on the refusal of the courts to apply the doctrine of *respondeat superior* or,

[1] "285.01 **Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by serving the summons and complaint on the attorney general or by leaving copies at his office and by filing with the clerk of court a bond, not exceeding $1,000, with two or more sureties, to be approved by the attorney general, to the effect that he will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case he shall fail to obtain judgment against the state."

if applying it, upon the refusal to grant relief on the public-policy ground that tax money should not be used for the payment of tort claims. The practical effect was that an injured party could not collect for his injuries from the government if his claim was based upon negligence.

The first tort claim against the state to be denied was considered in *Houston v. State* (1898), 98 Wis. 481, 74 N. W. 111, 42 L. R. A. 39. In that case this court said that an action for alleged unlawful and tortious action of agents and officers of the state could not be maintained against the state for the reason the legislature had never authorized the bringing of an action for such misconduct. *See also Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163 (a safe-place case). In *Forseth v. Sweet* (1968), 38 Wis. 2d 676, 158 N. W. 2d 370, we interpreted the *Houston Case* as resting in part upon the lack of substantive liability but more heavily upon the failure of the legislature to provide a procedure for suit and hence a consent to be sued. It is argued this view was not necessary to the decision of that case and was used only by way of argument. That is true, but it does not weaken the logic of the view. In *Chicago, M., & St. P. Ry. v. State* (1881), 53 Wis. 509, 10 N. W. 560, this court said the statute related only to actions involving ordinary claims against the state which, if valid, rendered the state a debtor to the claim.

We think all that the legislature had in mind at the time it passed the section was to consent to be sued in cases only where there then existed a liability for the claim, and it is a little late in the day for this court now to say that the legislature also intended to include a consent to be sued for tort claims if this court at some-time in the future reversed itself and abolished govern-mental tort immunity. We cannot now put more meaning into this section as a consent to be sued because *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618,

has removed the defense of tort immunity. *Holytz* did not decide this issue but expressly anticipated it and reserved it for future determination.

This view that sec. 285.01, Stats., and its progenitor was not intended to be a general waiver of the state's immunity from suit is shared by most courts. The principle of governmental tort immunity was distinguished from sovereign immunity from suit and any waiver of sovereign immunity from suit did not carry with it by general language the abrogation of governmental tort immunity. The most clear and definite language of consent to suit was required to also constitute a recognition of liability for tort and waiver of any defense. *See* Borchard, *Government Liability in Tort* (1924), 34 Yale Law Journal 1, 9; Annot. (1921), *Effect of statute permitting state to be sued upon the question of its liability for negligence or tort,* 13 A. L. R. 1276; Annot. (1947), *Effect of statute permitting state to be sued upon the question of its liability for negligence or tort,* 169 A. L. R. 105. *See also* Shumate, *Tort Claims Against State Governments,* 9 Law and Contemporary Problems 242 (1943).

Although this court abolished governmental tort immunity, it has no power to grant consent to sue the government. If sec. 285.01, Stats., were now enacted in the light of *Holytz,* we could easily hold it constituted a waiver of immunity from suit in tort cases, but since the section is more than procedural in nature, we cannot adopt the continuing-consent argument on waiver of immunity to suit. Whether the state as a sovereign is willing to be sued is a legislative problem. It is for the legislature to declare pursuant to the mandate in art. IV, sec. 27 of the Wisconsin Constitution how and in what respect the state can be sued by a citizen. We understand there is presently pending in the legislature Senate Bill 6 which comprehensively deals with claims

and actions against the state and apparently permits suits against the state for torts.

## 2. *Nature of sec. 895.43, Stats.*

The plaintiff claims that sec. 895.43, Stats.,[2] is an enabling act which allows a tort action against the state. This conclusion is based upon the argument that this section was passed after and in direct response to the decision in *Holytz* and therefore shows the intent of the legislature to provide a procedure for suing the state. It is true that the drafting file on ch. 198, Session Laws of 1963, which created this section contains a drafting request which gave as its subject tort liability of state and municipality. However, the bill as enacted was entitled "Tort actions against political corporations, governmental subdivisions or agencies, and officers, agents or employes; notice of claim, limitation of damages and suits" and did not expressly name the state of Wisconsin. But more importantly, the text of the statute does not refer to the state and there is nothing in the wording which indicates the legislature intended to include the state of Wisconsin or its agencies. The language "governmental subdivision or agency thereof" cannot refer to the state and can mean only an agency of a governmental subdivision; and hence, not an agency of the state.

---

[2] "895.43 Tort actions against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of injury; limitation of damages and suits. (1) No action founded on tort, except as provided in s. 345.05, shall be maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of such corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage . . . is served . . ."

This section is not an enabling or consent statute but a procedural one which presupposes the right to sue and the substantive liability on the part of the governmental units designated therein. We think this section does not apply to the state or a state agency as being within the term "governmental subdivision or agency thereof." In *Majerus v. Milwaukee County* (1968), 39 Wis. 2d 311, 159 N. W. 2d 86, this question was not raised for decision or decided. It was assumed to apply *arguendo* in the context of a pleading issue. We guardedly stated in reference to the failure to plead compliance with the section in a complaint against the Armory Board, a state agency, "We think the defect, if it is one, is not jurisdictional in nature." We hold, therefore, that this section does not apply to the state or its agencies.

### 3. *Nature of Wisconsin Exposition Department.*

The trial court held the department could be sued as an independent body politic or as an "independent going concern." We do not think the department is of such a nature that it may be sued. The legislature may create an agency with independent proprietary powers or functions and sufficiently independent of the state to be sued as such. When the state so creates an agency, it waives its sovereign immunity in that respect. This doctrine and its guidelines were explained in *Majerus v. Milwaukee County, supra,* which was based upon the foundation case of *Sullivan v. Board of Regents of Normal Schools* (1932), 209 Wis. 242, 244 N. W. 563. *See also Metzger v. Department of Taxation* (1967), 35 Wis. 2d 119, 150 N. W. 2d 431.

The department was created by sec. 27.30, Stats., which provides for a board of directors to be appointed by the governor. The board is given the powers to hire an administrator, to promulgate rules governing their facilities, to appoint advisory committees, and has the

same powers as granted the board of regents of the University of Wisconsin by sec. 36.06 (6), to provide for improvement of existing facilities. The department also has the power to manage the state fair park and supervise all activities there and to police it. The department does not have any power to incur any state debt in the operation of the properties under its care.

The department is not set up expressly as a separate corporate or politic body or given the power to sue or be sued. Whatever lease obligations are incurred by the department are those of the state of Wisconsin. Thus while the department has proprietary functions or powers of a going concern, it is not so independent as to render it an "independent going concern." The powers granted do not constitute the department a *sui juris* entity. The department is only an arm or agency of the state without the capacity of being sued as a separate entity.

### *Plaintiff's Appeal.*

The plaintiff contends error in the trial court's granting General's motion for summary judgment. We disagree. An insurer may be sued directly in spite of a no-action clause only in a liability policy involving a motor vehicle by virtue of sec. 260.11 (1), Stats. But the plaintiff argues the permissive and mandatory joinder sections, secs. 260.11 (1) and 260.12, permit direct action against all insurance companies on any type of policy notwithstanding a no-action clause in the policy. The plaintiff sees no difference between the wind and an automobile. But sec. 260.11 (1), as amended in 1967 by ch. 14, sec. 2, Laws of 1967, specifically authorized direct action only against insurers of motor vehicles involving liability policies in actions "for damages caused by the negligent operation, management, control, maintenance, use or defective construction of a motor vehicle." It is true in casualty policies such as fire, lightning, hail,

and cyclone, an insurance company may be sued directly by its insured, but this is because of the difference in the nature of a casualty policy and a liability policy. Except as provided in sec. 260.11, there is no express statutory authority for a third party not an insured to sue an insurance company on a liability policy, especially one which contains a no-action clause. The cause of action in this case does not come within this section. In cases falling outside the scope of this section, a "no-action" clause is valid and is a bar to a suit by a third party before liability is established. *Attoe v. State Farm Mut. Automobile Ins. Co.* (1967), 36 Wis. 2d 539, 153 N. W. 2d 575.

*By the Court.*—The appeal from the order denying the motion of the state of Wisconsin and the Wisconsin Exposition Department is reversed, with directions to grant the motion for summary judgment dismissing the action as to them; the appeal from the judgment dismissing the action as to the General Insurance Company of America is affirmed.