CHART, by Guardian *ad litem,* and another, Appellants, v. GUTMANN, by Guardian *ad litem,* and others, Defendants: STATE, Respondent.

*No. 145. Argued October 2, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 331.)

422

424

For the appellants there was a brief by *Curtis M. Kirkhuff* of Madison, attorney, and *Richard E. Sommer*

of Rhinelander, guardian *ad litem,* and oral argument by *Mr. Kirkhuff.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. The question involved in this appeal as agreed to by the parties is: Whether or not a tort claimant who has exhausted the statutory-claims procedure and in addition has introduced appropriate legislation in the state legislature to appropriate compensation for injuries received, which legislation subsequently failed to pass said state legislature, may then commence suit in a circuit court in this state for the recovery of money damages against the state of Wisconsin.

This case once again presents an attack on the venerable doctrine of governmental immunity from suit by tort claimants in the absence of consent.

The Wisconsin Constitution, art. IV, sec. 27, provides:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

It is undisputed that since *Holytz v. Milwaukee* [1] there is substantive liability imposed upon the state when its agents, in the course of their employment, commit a tort. This court in that case said:

"Henceforward, there will be substantive liability on the part of the state, but the right to sue the state is subject to sec. 27, art. IV, of the Wisconsin constitution . . . . The decision in the case at bar removes the state's defense of nonliability for torts, *but it has no effect upon the state's sovereign right under the constitution to be sued only upon its consent."* (Emphasis added.) [2]

---

[1] (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

[2] *Id.* at page 41.

Then in *Forseth v. Sweet*,[3] this court, recognizing that the above quoted constitutional provision was not self-executing but needed legislative implementation, found "no statutory pattern that would lead us to conclude that the legislature has expressly or impliedly acted under art. IV, sec. 27, to direct in what manner and in what courts suits may be brought against the state."[4]

The appellant here attempts to avoid the impact of *Forseth* by arguing that the instant case can be factually distinguished from *Forseth* since here, unlike *Forseth*, appellants have exhausted the statutory-claims procedure, including denial by the state legislature, before commencing suit against the state.

Our first inquiry must be whether there is historical authority which would permit tort claimants to sue the state. The short answer is: "No."

Sec. 285.01, Stats., as it exists now, is substantially the same as when it was first enacted in 1850.[5] This statute now provides:

". . . Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by serving the summons and complaint on the attorney general . . . ."

This court in *Dickson v. State*[6] upheld the validity of this statute. Then in 1881 this court decided the *Chicago, Milwaukee & St. Paul Ry. v. State Case*.[7] In that case the plaintiff railroad company commenced an action in

[3] (1968), 38 Wis. 2d 676, 158 N. W. 2d 370.

[4] *Id.* at page 685.

[5] *See* ch. 249, Laws of 1850, which provided: "Sec. 1. That hereafter it shall be competent for any person or persons, deeming him, her, or themselves, or any body politic, deeming itself aggrieved by the refusal of the legislature to allow any just claim against the state, to exhibit and file a petition . . . with the clerk of the supreme court . . . ."

[6] (1853), 1 Wis. 110 (*122).

[7] (1881), 53 Wis. 509, 10 N. W. 560.

the supreme court pursuant to the statute as it then existed.[8] The action sought to restrain the state of Wisconsin from collecting certain license fees payable by the railroad to the state of Wisconsin under the then existing law. The state of Wisconsin by the attorney general demurred to the complaint on the grounds (1) that the court had no jurisdiction of the person of the defendant or the subject matter of the action, and (2) that the complaint did not state facts sufficient to constitute a cause of action.

In its decision the court first held that since the complaint failed to allege performance of the condition precedent to bringing suit, *i.e.*, refusal by the legislature to honor the claim, the complaint was fatally defective and this defect could be reached by general demurrer. Hence, the state's demurrer was well taken and the court said it did not consider the case on the merits.

Nevertheless, the court then went on to say that this action was not authorized by the statute.

". . . It is manifest from the language of the section [sec. 3200], and from the whole chapter of which the section is a part, that the statute relates only to actions upon those *ordinary claims against the state which, if valid, render the state a debtor to the claimant;* and not to an equitable action brought directly against the state to restrain it from perpetrating an alleged threatened injustice." (Emphasis added.) [9]

The court also said that the above constitutional provision was not self-executing and, therefore, in order for an action of any kind to be maintained directly against the state, it must be authorized by some statute of the state.

Thus, by way of dicta in this opinion the court set forth two important principles:

---

[8] R. S. 1878, sec. 3200.

[9] *Chicago, Milwaukee & St. Paul Ry. v. State, supra,* footnote 7, at page 512.

1. That art. IV, sec. 27 of the Wisconsin Constitution is not self-executing, but rather in order for there to be a suit against the state, it must be authorized by some statutory enactment, and

2. That the statute in question relates only to those types of claims which, if valid, would make the state a debtor to the claimant.

This dicta was subsequently elevated to the status of controlling precedent by this court's decision in *Houston v. State.*[10] In that case a state veterinarian had negligently tested milk cows for tuberculosis and ordered their destruction. After their destruction it was determined that the cows were healthy and not diseased. The owner submitted a claim to the legislature which was denied. Then suit was commenced in the supreme court for money damages. The state demurred on the grounds that plaintiff lacked legal capacity to sue and that the complaint failed to state a cause of action. This court in sustaining the demurrer, and citing the *Chicago, Milwaukee & St. Paul Ry. Case,* held that the statute, which was the predecessor of the present sec. 285.01, Stats.,

". . . only relates to claims which, if allowed, render the state a debtor to the claimant. . . . This statute does not include a demand based upon the unlawful and tortious acts of officers or agents of the state. . . .

". . . this action for the alleged unlawful and tortious action of the officers and agents of the state cannot be maintained against the state, for the simple reason that the legislature has never authorized an action in this court for such misconduct." [11]

The recent interpretation of the *Houston Case* appears in *Forseth v. Sweet,*[12] wherein this court stated:

". . . The *Houston Case* rests in part upon the fact that there is no substantive liability upon the state, a

[10] (1898), 98 Wis. 481, 74 N. W. 111.

[11] *Id.* at pages 487, 488.

[12] *Supra,* footnote 3. *See also Townsend v. Wisconsin Desert Horse Asso.* (1969), 42 Wis. 2d 414, 167 N. W. 2d 425.

position since modified in *Holytz,* but a careful reading of the case makes it clear that the decision was primarily based upon the failure of the legislature to provide a *procedure* for suit." [13]

The appellants in the instant case do not quarrel with this position as stated in *Forseth,* but rather, strenuously argue that *Houston* was erroneously decided in the first place and that it can no longer be cited as authority for the proposition that the legislature has failed to provide a procedure for suit against the state of Wisconsin. In other words, appellants argue that the word "claim" as it appears in the statute was erroneously limited to claims that make the state of Wisconsin a debtor to the claimant. The word "claim" they argue also encompasses tort claims and thus the same procedure used by creditor claimants to sue the state, *i.e.,* sec. 285.01, Stats., is available to tort claimants.

Appellants contend that the proper decision in the *Houston Case* would have been to find that a procedure for tort claimants to sue the state *did* exist but that tort claimants were not within the purview of the statute granting such permission since sovereign immunity to tort liability still existed. The anomaly of a decision of this type which would say (1) yes, the state has agreed to allow tort claimants to sue it by the procedure provided in sec. 285.01, Stats., but (2) no, tort claimants cannot collect because there is sovereign immunity to tort liability, makes this position untenable.

We think that *Houston* was correctly decided. The fact is that this decision has been bolstered by seventy-one years of further judicial decisions [14] and seventy-one years of legislative acquiescence in this interpretation.

[13] *Id.* at page 683.
[14] *See Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163; *Petition of Wausau Investment Co.* (1916), 163 Wis. 283, 158 N. W. 81.

As this court said in *Zimmerman v. Wisconsin Electric Power Co.*: [15]

". . . Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; for the principle of the courts' decision—legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function." [16]

Thus, it would appear that sec. 285.01, Stats., does not now, nor has it ever provided a procedure by which tort claimants may sue the state.

Even now there are present legislative efforts to introduce such a procedure. There is presently before the senate of the state of Wisconsin, Senate Bill No. 6. [17] Sec. 285.02 of this proposal provides:

"**285.02 Consent to Suits Against the State; Exceptions.** (1) The sovereign immunity of the state from suit is waived except as specifically reserved by this chapter.

"(2) The state reserves its sovereign immunity from suit and no action may be maintained:

"(a) Against the state for the intentional torts of its employes unless the employe acted in good faith and in the scope of his employment.

"(b) Against the state or its employees, if founded on tort and based upon acts or omissions done in the exer-

---

[15] (1968), 38 Wis. 2d 626, 157 N. W. 2d 648.

[16] *Id.* at pages 633, 634. *See also Hahn v. Walworth County* (1961), 14 Wis. 2d 147, 154, 109 N. W. 2d 653; *Meyer v. Industrial Comm.* (1961), 13 Wis. 2d 377, 382, 108 N. W. 2d 556.

[17] Referred to Committee on Finance on February 18, 1969.

cise of legislative, quasi-legislative, judicial or quasi-judicial functions.

"(c) Against the state for injuries resulting from insufficiency of maintenance of state highways, bridges or roads which the state is obligated to maintain and which a county, city or village by law or by agreement is obligated to maintain. For the purpose of this paragraph, the definition of maintenance in s. 84.07 (1) applies.

"...

"(3) Where immunity from suit is waived, consent to be sued is granted and the liabilities, defenses and remedies of the state shall be determined as if the state were a private person, except that the state shall not be liable for punitive damages.

"(4) In any action founded on tort against the state or its employes the amount recoverable for an injury shall not exceed $100,000 for each individual, or $1,000,000 for each occurrence.

"(5) Nothing in this chapter shall be construed as an admission of liability by the state.

"(6) Where a remedy against the state is provided elsewhere in the statutes, the provisions of the statutes providing the remedy shall control and be followed." [18]

The Note following this section contains the following language:

"Section 285.02 contains the substantive provisions of ch. 285. Sub. (1) is a broad waiver of immunity from all actions including tort, contract, etc. Subs. (2) and (6) contain the only limiting provisions.

"Sub. (2) (a) differs from most state immunity statutes in that recovery against the state can be had for intentional torts in certain situations. Section 270.58 as amended by ch. 603, laws of 1965, contains a similar provision. That section provides for indemnification of state and municipal employes for any judgment provided they acted in good faith and in the scope of their employment. There are no limitations on intentional torts. To the contrary, ch. 438, laws of 1959, deleted a provision in s. 270.58 excepting false arrest actions as a basis for indemnification. This bill amends s. 270.58 by deleting all references to the 'state'. (See SECTION 24)

[18] Senate Bill No. 6, pp. 19–21.

"Sub. (2) (b) adopts the limitations on suit presently found in s. 895.43 (3) (formerly s. 331.43 (3)) relating to municipal liability. This phraseology gives considerable flexibility to the court since the municipal section has had virtually no interpretation and the common law generally did not draw this distinction. Whether one is performing a judicial, quasi-judicial, legislative or quasi-legislative function should turn on whether the element of discretion exists in the performance of such function. The policy underlying sub. (2) (b) is not to deter public officials from making reasonable policy decisions requiring a certain degree of judgment.

"Sub. (2) (c) has been included to clarify the law relating to liability for defective roads. It is clear that a county may be held liable for negligent maintenance of a state highway provided the county contracted with the state highway commission to maintain the highway. See *Dunwiddie v. Rock County,* 28 Wis. (2d) 568 (1965). However there is doubt whether this liability would extend to the state assuming immunity were waived. This bill absolves the state from negligent maintenance by the county of state roads on the theory that the county is acting as an independent contractor. SECTION 19 of the bill amends s. 84.07 to codify the *Dunwiddie* decision.

". . .

"*Holytz v. City of Milwaukee,* 17 Wis. (2d) 26 (1962) abrogated sovereign immunity against the state (the declaration was dictum since the state was not a party to the action) but did not, and could not, waive the constitutional requirement that the legislature consent to suits against the state. Article IV, sec. 27. Sub. (3) along with sub. (2) makes it clear that these substantive and procedural barriers no longer exist.

"Sub. (4) places a monetary limitation on actions against the state. Sub. (5) makes it clear that none of the language of this chapter is an admission of state liability.

"Sub. (6) recognizes that many existing statutes provide for remedies against the state. Since many of these statutes provide for different procedures than those established in ch. 285, the existing statutes shall control. Examples of statutes not within the purview of ch. 285 are: ch. 32 relating to eminent domain; ch. 88 relating to farm drainage; ss. 267.23 and 304.21 dealing with gar-

nishment of public employes; s. 276.48 concerning partition of lands where the state is a cotenant; and various statutes authorizing suits against the state for refunds from unlawful tax collections." [19]

This proposal indicates that the legislature does not think that the present sec. 285.01, Stats., provides a procedure for tort claimants to sue the state as the appellants argue.

Our second inquiry is whether there are other provisions which, coupled with sec. 285.01, Stats., permit the bringing of a tort action against the state.

Appellants argue that certain sections of ch. 16, Stats., coupled with sec. 285.01, provide the key to the courtroom door and permit a tort claimant to sue the state.

Sec. 16.53 (8), Stats., provides in part:

"All claims of every kind against the state requiring legislative action . . . shall be filed in the office of the director. The director shall examine the same, *see if ordered by competent authority* and if properly made, designate the fund to which they are chargeable. The director shall as soon as practicable refer such claims to the claims commission established under s. 16.007 for its findings of fact, its conclusions, and its report thereon to the legislature for action. . . ." (Emphasis added.)

Sec. 16.007 (1), Stats., creates a claims commission to:

". . . receive, investigate and make recommendations on all claims presented against the state which are filed pursuant to s. 16.53 (8). No claim or bill relating to such a claim shall be considered by the legislature until a recommendation thereon has been made by the claims commission."

Finally, sec. 16.007 (6), Stats., provides in part:

"The commission shall report its findings and recommendations, on all claims referred to it, to the legislature for action. If from its findings of fact the commission concludes that any such claim is one on which the state

---

[19] *Id.* at pages 21–23.

is legally liable, *or one which involves the causal negligence of any officer, agent or employe of the state,* or one which on equitable principles the state should in good conscience assume and pay, it shall cause a bill to be drafted covering its recommendations and shall report its findings and conclusions and submit the drafted bill to the joint committee on finance at the earliest available time. . . ." (Emphasis supplied.)

Assuming that these sections apply, as they apparently do,[20] to tort claims, the question arises: What happens when the legislature takes no action or fails to pass the recommended bill?

Appellants contend that upon legislative failure to pass upon the claim or inaction by the legislature, sec. 285.01, Stats., is triggered and then the tort claimant can sue the state under the provisions of that statute.[21]

This argument is not without force, but in order for this court to accept it, it would have to ignore the preceding discussion wherein it was seen that sec. 285.01, Stats., was limited to those claims which, if valid, would make the state a debtor to the claimant.[22]

Nevertheless, appellants insist that all the cases which so limited sec. 285.01, Stats., can be distinguished from the instant situation, since they were decided prior to the establishment of the claims procedure of ch. 16, Stats., and/or they all involved direct suits against the state with no attempted compliance with the statutory claims procedure as here. Also, appellants argue that secs. 114.065 and 345.05 permit suits against the state pursuant to sec. 285.01, when the legislature has failed to act upon or has denied a claim arising out of damages

---

[20] *See* sec. 16.007 (7), Stats., which provides: "This section shall not be construed as relieving any 3rd party liability or releasing any joint tort-feasor."

[21] *See* secs. 114.065 (5) and 345.05 (4), Stats.

[22] *See Houston v. State, supra,* footnote 10, and accompanying text.

caused by the negligent operation of a state-owned aircraft or state-owned motor vehicle. Thus, appellants contend that since the state has waived its immunity to suit in those situations, it should be deemed to have waived its immunity to suit in the limited situation here presented, *i.e.*, where a tort claimant has followed the statutory claims procedure and has obtained no relief.

The obvious distinction between these situations can be drawn. Both secs. 114.065 and 345.05, Stats., specifically provide that sec. 285.01 is to be utilized if the legislature fails to act or denies the claims made thereunder.[23] Moreover, both those sections deal specifically with the negligent operation of *state owned and operated* apparatus—aircraft and motor vehicles respectively.

In ch. 16, Stats., there is no specific directive that sec. 285.01 is to be utilized if the legislature fails to act or pass the claim. Similarly, no state owned or operated apparatus is involved here.

This distinction likewise disposes of appellants' contention respecting denial of equal protection of the laws.

Appellants are in the unfortunate position of having suffered a wrong for which there is no judicial remedy.

*By the Court.*—Order affirmed.

---

[23] *See* secs. 114.065 (5) and 345.05 (4), Stats.