# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1023 |
| COMPLETE TITLE: | Adam R. Mayhugh, |
| | Plaintiff-Appellant-Petitioner, |
| | v. |
| | State of Wisconsin, Wisconsin Department of Corrections and Redgranite Correctional Institution, |
| | Defendants-Respondents, |
| | Gary Hamblin, Michael A. Dittmann, John A. Doe, John B. Doe, ABC Engineering Company, DEF Construction Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company and PQR Insurance Company, |
| | Defendants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(No cite)

| | |
|---|---|
| OPINION FILED: | July 10, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 10, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waushara |
| JUDGE: | Guy D. Dutcher |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | GABLEMAN, J., concurs. (Opinion Filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs by *Nicholas Andrew Wagener* and *Bollenbeck Fyfe SC*, Appleton, and oral argument by *Nicholas Andrew Wagener*.

For the defendants-respondents, the cause was argued by *Karla Z. Keckhaver*, assistant attorney general, with whom on the brief was *Brad Schimel*, attorney general.

**2015 WI 77**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP1023
(L.C. No.   2012CV124)

STATE OF WISCONSIN                 :          IN SUPREME COURT

**Adam R. Mayhugh,**

            **Plaintiff-Appellant-Petitioner,**

       **v.**

**State of Wisconsin, Wisconsin Department of Corrections and Redgranite Correctional Institution,**

            **Defendants-Respondents,**

**Gary Hamblin, Michael A. Dittmann, John A. Doe, John B. Doe, ABC Engineering Company, DEF Construction Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company and PQR Insurance Company,**

            **Defendants.**

**FILED**

**JUL 10, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   ANN WALSH BRADLEY, J.   Petitioner, Adam R. Mayhugh, seeks review of an unpublished decision of the court of appeals affirming an order of the circuit court that dismissed his tort action against the State and the Department of Corrections

(DOC).[1] The court of appeals agreed with the circuit court that recovery was barred by the doctrine of sovereign immunity.

¶2 Mayhugh contends that sovereign immunity does not apply to the DOC. He maintains that by granting the DOC broad powers, the legislature established the DOC as an independent going concern. Based on his determination that the DOC is independent from the state, Mayhugh concludes that the DOC is not entitled to the sovereign immunity accorded to the state. In the alternative, Mayhugh asserts that the statutory grant of power to the DOC to sue and be sued should be interpreted as an express waiver of sovereign immunity.

¶3 We conclude that the DOC is entitled to sovereign immunity. The DOC lacks sufficient attributes to render it an independent going concern. Despite the breadth of its statutory powers, the character of those powers reveals that the legislature did not intend the DOC to be anything other than an arm of the state.

¶4 We further conclude that the legislature has not expressly waived the DOC's sovereign immunity. Wisconsin Stat. § 301.04 (2011-12),[2] which permits the DOC to sue and be sued, is not an express waiver of the DOC's tort immunity but rather addresses the DOC's capacity to be sued. Accordingly, we affirm

---

[1] Mayhugh v. State, No. 2013AP1023, unpublished slip op. (Wis. Ct. App. June 3, 2014) (affirming order of the circuit court for Waushara County, Guy D. Dutcher, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

the court of appeals' determination that Mayhugh's suit against the DOC is barred by sovereign immunity.

I

¶5    In 2011 Mayhugh, then an inmate at Redgranite Correctional Institution (Redgranite), attended a baseball game in Redgranite's recreational yard.  Staff directed him to sit in the bleachers to watch the game.  While he was sitting there, one of the players hit a foul ball, which flew into the bleachers and hit Mayhugh in the head.  As a result, Mayhugh suffered a fracture to his right temporal lobe and a severed artery that led to a blood clot, strokes, and acute respiratory failure.

¶6    Mayhugh subsequently filed a complaint against the state of Wisconsin, the DOC, Redgranite, unnamed construction and engineering companies, and unnamed insurers.  The complaint alleged negligence in the design of the baseball field and asserted that spectators were not protected from foul balls, that Redgranite failed to remedy the situation, and that Mayhugh was injured as a result.

¶7    The DOC moved for dismissal, arguing that as a state agency it was entitled to sovereign immunity.  It explained that the state had not consented to suit and therefore the court lacked personal jurisdiction.

¶8    After Mayhugh amended the complaint to include the Secretary of the DOC, the warden of Redgranite, and two unnamed officers as defendants, the DOC submitted another motion to dismiss.  It again claimed sovereign immunity.  Additionally, it

asserted that Mayhugh had failed to comply with the notice requirements for suits against state employees and therefore failed to state a claim against them.

¶9    The circuit court granted the DOC's motion.  The court agreed with the DOC that it was entitled to sovereign immunity under the Wisconsin Constitution unless the state had waived such immunity by consenting to be sued.  It observed that although the legislature had provided that the DOC could "sue and be sued," a number of authorities have declined to construe such language as a waiver.  It then concluded that the State had not consented to suit.  The court further determined that Mayhugh failed to comply with the notice statute for suits against state employees.  Accordingly, it determined that it lacked jurisdiction over the state employee defendants.

¶10 Mayhugh appealed the portion of the decision relating to sovereign immunity.  He contended that the defense of sovereign immunity is unavailable because the DOC is an independent going concern and not an arm of the state.  In the alternative, he advanced that the legislature waived sovereign immunity for the DOC by enacting Wis. Stat. § 301.04, which permits the DOC to sue and be sued.

¶11 The court of appeals summarily affirmed the circuit court.  Mayhugh v. State, No. 2013AP1023, unpublished slip op. (Wis. Ct. App. June 3, 2014).  It observed that in Lindas v. Cady, 142 Wis. 2d 857, 861-63, 419 N.W.2d 345 (Ct. App. 1987), aff'd in part, rev'd in part, 150 Wis. 2d 421, 441 N.W.2d 705 (1989), it determined that the phrase "sue and be sued" was not

4

consent for suit against the DOC's predecessor agency, the Department of Health and Human Services. Id. at 2. Given that holding, it concluded that the language in Wis. Stat. § 301.04 was not a waiver of sovereign immunity. Id. The court of appeals further determined that the DOC was not an independent political body or an independent state agency, and therefore was not exempted from sovereign immunity. Id. at 3.

II

¶12 We are asked to determine whether the circumstances of this case fall within either of the two asserted scenarios rendering sovereign immunity inapplicable to a state entity. Specifically, whether the legislature created the DOC in a manner that renders it an independent going concern, which acts neither as the state's arm nor its agent, and whether the legislature has expressly waived the DOC's sovereign immunity. Both of these issues present questions of law which we review independently of the decisions rendered by the circuit court and court of appeals. Canadian Nat'l R.R. v. Noel, 2007 WI App 179, ¶5, 304 Wis. 2d 218, 736 N.W.2d 900.

III

¶13 We begin with the first scenario rendering sovereign immunity inapplicable: the creation of an independent state entity. The sovereign immunity derived from Article IV, Section 27 of the Wisconsin Constitution protects the state from suit. Lister v. Bd. of Regents, 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976). Generally, for purposes of sovereign immunity, an action against a state agency or board is deemed an action

5

against the state.  Bahr v. State Inv. Bd., 186 Wis. 2d 379, 387-88, 521 N.W.2d 152 (Ct. App. 1994).  However, when the state creates an entity independent from the state, which acts as neither its arm nor its agent, such entity falls outside the protection of sovereign immunity.  Majerus v. Milwaukee Cnty., 39 Wis. 2d 311, 315, 159 N.W.2d 86 (1968).  Cases often refer to such entities as "independent going concerns."  See, e.g., German v. Wisconsin DOT, 2000 WI 62, ¶18, 235 Wis. 2d 576, 612 N.W.2d 50; Townsend v. Wisconsin Desert Horse Ass'n., 42 Wis. 2d 414, 424, 167 N.W.2d 425 (1969); Majerus, 39 Wis. 2d at 314.

¶14 This court first referred to independent going concerns in Sullivan v. Bd. of Regents, 209 Wis. 242, 244 N.W. 563 (1932).  There, the plaintiff brought suit against the Board of Regents, asserting that the State had waived sovereign immunity by creating the Board as a body corporate. The court disagreed, stating that although the Board was a body corporate, it was merely an arm of the state.  Id. at 244.

¶15 To explain its conclusion, the court observed that the Board lacked the following attributes: it had "no power to raise money by taxation"; it could "not incur any liability beyond the amount appropriated to it by act of the legislature"; "the title to all property acquired by [the Board] is held by it in trust for the state"; the Board "may not dispose of real property without express authority from the state"; "[the Board's] power to dispose of personalty is limited"; and "[a]ll funds belonging to the institution, whether derived from appropriations or from the sale of property, are in the custody of the state treasurer

6

and can only be disbursed on a warrant drawn by the secretary of state." Id. at 244.

¶16  The absence of these attributes indicated that if the plaintiff were to recover a judgment against the Board, "there would be no property out of which execution could be satisfied." In other words, if the Board created liability, "it is a liability of the state and must be enforced as other liabilities against the state are enforced." Id. at 245. Accordingly, the court determined that nothing in the statutes indicated any intention that the Board be an independent going concern, and sovereign immunity applied. Id. at 244.

¶17  As Sullivan suggests, the determination that a state entity is an independent going concern is a narrow exception to sovereign immunity. Canadian Nat'l R.R., 304 Wis. 2d 218, ¶7. To date, our case law has identified only three entities that fall into this category: the State Armory Board, the State Housing Finance Authority, and the State Investment Board. Majerus, 39 Wis. 2d 311; State ex rel. Warren v. Nusbaum, 59 Wis. 2d 391, 208 N.W.2d 780 (1973); Bahr, 186 Wis. 2d 379.

¶18  In Majerus, 39 Wis. 2d 311, the court considered whether the State Armory Board was an independent going concern. The legislature had designated the Armory Board as "a body politic and corporate" with the power "to sue and be sued." Id. at 315.  It had also granted the Board the powers to convey real estate, dispose of personal property, hold and disburse its own funds independent of state warrants, borrow money, and issue and sell bonds and other evidences of indebtedness to accomplish its

7

purposes.  Id. at 314-15.  The court acknowledged that an entity need not have all of the powers enumerated in Sullivan in order to be independent.  Id. at 315.  It determined that the designation of the Board as a body politic and corporate, combined with the Board's broad proprietary powers, rendered it an independent going concern, outside the scope of sovereign immunity.  Id.

¶19  The court conducted a similar inquiry with regard to the State Housing Finance Authority in Nusbaum, 59 Wis. 2d 391. It noted that although the legislature had stated that the Authority was "a public body corporate and politic," the court must look beyond that denomination and independently consider "the powers and structure conferred upon the entity in order to determine its nature."  Id. at 424.

¶20  The court reviewed the broad proprietary powers the legislature granted to the Authority:

> The Authority, pursuant to sec. 234.03, is granted all the powers "necessary or convenient" to implement its public purpose, including but not limited to the power to sue and be sued; to have perpetual existence; to make and execute contracts; to incur debt; to acquire and dispose of mortgages or security interests; to acquire leaseholds, real or personal property or any interest therein; and, under certain conditions, to own, hold, clear, improve and rehabilitate and to sell, assign, exchange, transfer, convey, lease, mortgage or otherwise dispose of or encumber the same.

Id. at 424.  Turning its attention to the fiscal powers, the court continued:

> The Authority has the power to hold and disburse its own funds independent of state warrants. It has the power to borrow money and issue and sell bonds and

8

other evidences of indebtedness to accomplish its purposes. Its debts thus created are satisfied out of rents and interest the Authority receives from the property the Authority acquires and the investments it makes.

Id. Acknowledging that the proprietary and fiscal powers supported the legislature's declaration that the Authority was an independent entity, the court determined that the Authority "is neither an arm nor agent of the state." Id. at 425.

¶21 Likewise, the State Investment Board was declared an independent going concern in Bahr, 186 Wis. 2d 379. To support this determination, the court identified the following statutory features of the Board: its broad authority to manage and invest, sell, reinvest, and collect income and rents, to employ outside counsel and contractors, and to acquire, manage, and sell real estate without Department of Administration (DOA) participation; the power to sue and be sued; the legislature designated it as a body corporate, and the legislature's stated intent that the Board be an independent agency of the state. Id. at 396, 399. Thus, the court determined that the Board was "ineligible to raise the defense of sovereign immunity." Id. at 399.

¶22 Majerus, Nusbaum, and Bahr demonstrate that in determining whether a state entity is an independent going concern, courts should consider both the character and breadth of the statutory powers granted to the entity. We observe that the entities at issue in those cases shared some common features: they were authorized to sue and be sued, they were created as a body corporate or politic, they had powers indicating budgetary autonomy, and they had the power to hold

9

and convey real estate.    Although the presence of this combination of features will generally weigh in favor of independence and therefore ineligibility for sovereign immunity, we caution that it is a totality of the circumstances analysis and no one factor is determinative.

¶23  Applying these factors to the DOC, we conclude that it is not an independent going concern.    The DOC has only one of the attributes identified in Majerus, Nusbaum, and Bahr: the ability to sue and be sued.    The DOC was not established as a body politic or body corporate.    Additionally, it lacks budgetary autonomy as it is funded by general state revenue, has a budget controlled by the appropriation process and the DOA, and cannot incur any liability beyond the amount appropriated to it. Wis. Stat. §§ 16.50(1)(a), 20.410, 301.10. Further, the DOC is subject to state controls in the purchase of real estate, goods, and services.    Wis. Stat. §§ 16.848, 301.235(2)(a).    We could find no other statutory powers that would suggest that the DOC is anything other than an arm of the state.

¶24  The various statutory powers identified by Mayhugh do not support his assertion that the DOC is an independent going concern.  Specifically, Mayhugh points to a number of the DOC's

statutory powers relating to managing finances[3]; the DOC's limited contracting power[4]; the DOC's limited powers with respect to real estate[5]; and the DOC's general purpose, right to govern

---

[3] Wis. Stat. § 301.10 (the power to audit bills and make payments); Wis. Stat. § 301.075 (authorization to withdraw or disburse moneys deposited in a public depository to the credit of the DOC); Wis. Stat. § 301.085 (the power to make benefit payments and charge counties for making those payments); Wis. Stat. § 301.105 (the power to collect commissions from telephone companies); Wis. Stat. § 301.12 (the power to enforce and seek judgments, compel payments, charge interest, present documents in court to seek payment, and appoint counsel to seek enforcement of collection and deportation); Wis. Stat. § 301.05 (the DOC's ability to accept gifts, grants, or donations, and to hold money in trust).

[4] Wis. Stat. § 301.065 (power to contract with religious organizations); Wis. Stat. § 301.07 (power to contract with the federal government); Wis. Stat. § 301.031 (contracting powers for youth programs); Wis. Stat. § 301.08 (power to contract for the purchase of goods, care, and services for incarcerated individuals and individuals supervised by the DOC).

[5] Wis. Stat. § 301.235 (the authorization to construct and refinance indebtedness for construction of new buildings, convey title on property owned by the DOC, lease property and assign revenues coming in from the properties); Wis. Stat. § 301.24 (condemnation power to acquire land, sell excess land, purchase land and lease land); Wis. Stat. § 301.37 (design control and approval authority over various facilities in Wisconsin).

11

and a number of powers relating to the care, custody, and control of inmates[6]. We address each in turn.

¶25 First, the financial powers referred to by Mayhugh must be considered in light of the fact that the DOC's funds are controlled by the legislature through the appropriations process. Wis. Stat. § 20.410. Additionally, the DOC cannot pay its bills until they have been audited under the supervision of the DOA. Wis. Stat. § 301.10. Further, all payments must be made on the warrant of the DOA. Id. Thus, the overarching character of the DOC's budget does not support a conclusion that the DOC is independent of the state.

¶26 Likewise, the contracting powers identified by Mayhugh do not convince us that the DOC is independent. These powers are limited to contracts with specific parties and contracts for specific purposes. Notably, the DOC's ability to contract for youth programs is limited to available revenues and subject to

---

[6] Wis. Stat. § 301.001 (purpose of avoiding sole reliance on incarceration); Wis. Stat. § 301.03 (general corrections authority); Wis. Stat. § 301.02 (power to maintain and govern correctional institutions); Wis. Stat. § 301.055 (power to limit the number of prisoners); Wis. Stat. § 301.29 (police powers); Wis. Stat. § 301.025 (power to establish a separate division for juveniles); Wis. Stat § 301.06 (power to set up its own educational system); Wis. Stat. § 301.30 (power to setup an independent wage scale for inmates). Wis. Stat. § 301.035 (the establishment of a DOC division for hearings and appeals related to parole and probation); Wis. Stat. § 301.045 (the DOC's power to investigate, hold hearings, subpoena witnesses and make recommendations to public or private entities).

the review and approval of the legislature's joint committee on finance. Wis. Stat. § 301.031(2g). Its ability to contract with religious organizations is subject to DOA provisions. Wis. Stat. § 301.065(2). Further, as noted above, payments for the DOC's contracts must be made on the warrant of the DOA. Wis. Stat. § 301.10. Overall, the limited contracting powers identified by Mayhugh do not evince an independent character of the DOC.

¶27 Additionally, contrary to Mayhugh's assertion, the real estate powers he identifies reveal that the DOC is not independent from the state. The DOC cannot sell land on its own, but must first seek approval of the Building Commission or the Joint Committee on Finance. Wis. Stat. § 301.24(4), (4m). Similarly, before purchasing land, the DOC must obtain the approval of and release of state building trust funds by the Building Commission. Wis. Stat. § 301.24(5). Thus, the overall character of the DOC's powers with respect to real estate support the conclusion that it is dependent on rather than independent of the state.

¶28 Considering the DOC's general purpose and the powers granted to it to fulfill that purpose, we fail to see how they support a conclusion that the DOC is an independent going concern. Rather than suggesting independence, the statutory statement of purpose reveals that the legislature intended the DOC to be intertwined with other state programs:

> The purposes of this chapter and chs. 302 to 304 are
> to prevent delinquency and crime by an attack on their

13

causes; to provide a just, humane and efficient program of rehabilitation of offenders; and to <u>coordinate and integrate</u> corrections programs with other social services. In creating the department of corrections, chs. 301 to 304, the legislature intends that <u>the state</u> continue to avoid sole reliance on incarceration of offenders and continue to develop, support and maintain professional community programs and placements.

Wis. Stat. § 301.001 (emphasis added). Further, by framing the statement of purpose in terms of the purpose of the state, as opposed to the purpose of the DOC, the statute suggests a legislative intent that the DOC operate as an arm of the state, rather than an independent agency.

¶29 The power to govern correctional institutions and the powers relating to the care, custody, and control of inmates do not weigh in favor of or against DOC independence. These powers are akin to those granted to other governmental entities to fulfill their purpose. The Board of Regents, for example, has similar powers to govern its system, determine the educational systems offered within that system, set admission policies, police authority, fix salaries, and hold hearings for its personnel. Wis. Stat §§ 36.09(1), 36.11(2), 36.115. Even with these powers the Board of Regents is not an independent going concern. <u>Lister</u>, 72 Wis. 2d at 292. These types of powers have not been mentioned in our jurisprudence relating to independent going concerns and say little about whether an entity is independent from the state.

¶30 Finally, Mayhugh bases a significant portion of his arguments on the statutes permitting the DOC to set up and

14

regulate the Prison Industries Board. Wis. Stat. § 303 et seq. However, that Board is but a segment of the DOC and is not itself the entity being sued.

¶31 We acknowledge that the Prison Industries Board has some budgetary autonomy. See George v. SC Data Ctr., 884 F. Supp. 329, 330 (W.D. Wis. 1995) (explaining that revenues from the sale of goods and services produced are applied to service debt on any bonds issued under the authority of the state legislature to finance Prison Industries programs). However, there is no indication that the revenues produced by the prison industries are the primary source of funding for the DOC as a whole. To the contrary, the Prison Industries Board receives appropriations from the state for prison industries costs that are not covered by its revenues, suggesting that its revenues may not even cover its own operations. Wis. Stat. §§ 20.410, 20.866(2)(uy). Therefore, the statutory powers of the Prison Industry Board do not support a conclusion that the DOC is an independent going concern.

¶32 In sum, the statutory powers granted to the DOC do not render it an independent going concern. Courts must consider both the character and breadth of the statutory powers granted to the entity when determining whether it is an independent going concern. Here, despite their breadth, the character of the DOC's powers reveals that the legislature did not intend for the DOC to be anything other than an arm of the state.

IV

15

¶33 Having established that the DOC is not exempt from sovereign immunity as an independent going concern, we turn to consider whether the state has expressly waived the DOC's sovereign immunity.

¶34 Article IV, Section 27 of the Wisconsin Constitution provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Courts have traditionally interpreted this language as meaning that the state can be sued only with its consent. Holytz v. City of Milwaukee, 17 Wis. 2d 26, 41, 115 N.W.2d 618 (1962).

¶35 "[C]onsent to suit may not be implied." Bahr, 186 Wis. 2d at 387. It must be express. See German, 235 Wis. 2d 576, ¶17 ("It is axiomatic that the state cannot be sued without the express consent of the legislature."); Metzger v. Wisconsin Dep't of Taxation, 35 Wis. 2d 119, 131, 150 N.W.2d 431 (1967) ("Well established in Wisconsin is the principle that in the absence of express legislative permission the state may not be subjected to suit."); State ex rel. Martin v. Reis, 230 Wis. 683, 685, 284 N.W. 580 (1939) ("it is an established principle of law that no action will lie against a sovereign state in the absence of express legislative permission.").

¶36 We can find no express waiver of the DOC's sovereign immunity. The court of appeals addressed this issue in Lindas, 142 Wis. 2d 857. In that case, the circuit court dismissed on sovereign immunity grounds the plaintiff's suit against the DOC's predecessor, the Department of Health and Social Services. On review, the court of appeals reiterated that "[i]n the

16

absence of express legislative authorization, the State of Wisconsin may not be sued." Id. at 861. It examined whether a statute providing that the department could sue and be sued provided such authorization and determined that it did not. Id.

¶37 The court reasoned that the "sue and be sued" statute was created "at a time when Wisconsin enjoyed governmental immunity from tort suits." Id. It observed that governmental immunity was subsequently eliminated in Holytz, 17 Wis. 2d 26. It then determined that the fact that Holytz "removed the defense of tort immunity" did not permit it to put more meaning into the sue and be sued statute. Id. at 862 (quoting Townsend, 42 Wis. 2d at 420-21). Accordingly, the court concluded that there was no express consent for tort suit against the Department of Health and Social Services. Id. at 863.

¶38 The court of appeals subsequently clarified that Lindas did not set forth "a blanket rule that legislative consent for an agency to sue and be sued [could not] be considered a waiver of sovereign immunity." Bahr, 186 Wis. 2d at 392-93. Rather, the holding in Lindas was limited to tort actions. Id.

¶39 Because we are considering a tort action against the DOC, we determine that Lindas governs. We acknowledge that unlike the statute at issue in Lindas, the statute permitting the DOC to sue and be sued was enacted after Holytz. However, the current DOC statute was based on the statute discussed in Lindas. It contains identical language. See Wis. Stat. § 301.04 ("The department may sue and be sued."); Wis. Stat.

17

§ 46.017 (1987-88) ("The department may sue and be sued."). Considering this background, we determine that the "sue and be sued" language in Wis. Stat. § 301.04 does not constitute an express waiver of sovereign immunity for tort suits.

¶40 As our statutes recognize, not every entity has the capacity to sue and be sued. Wis. Stat. §§ 802.03, 802.06. In other words, not every entity can be named as a party in a lawsuit. See, e.g., Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 694 (7th Cir. 2007) (observing that the Athletics Department "is merely a division of the University that is not capable of being sued"). For example, Wis. Stat. § 775.01 provides a procedure for the state to be sued in contract. The "sue and be sued" language in Wis. Stat. § 301.04 clarifies that the DOC could be named in such a suit.

¶41 Other jurisdictions have determined that "sue and be sued" can refer to the capacity to be named in a lawsuit. See Ransom v. St. Regis Mohawk Educ. & Community Fund, 658 N.E.2d 989, 995 (N.Y. 1995) ("statutory power to sue and be sued contained in the D.C. and New York nonprofit corporation laws did nothing more than recognize the Fund's status as an entity with the capacity to enter our courts"); Self v. Atlanta, 377 S.E.2d 674, 676 (Ga. 1989) (sue and be sued "should be read as providing an entity with the status and capacity to enter courts, and not as waiving sovereign immunity"); Town of Highland Park v. Iron Crow Constr., Inc., 168 S.W.3d 313, 318 (Tex. App. 2005) (sue and be sued speaks to an entity's

18

"capacity to sue and its capacity to be sued when immunity has been waived").[7]  We agree and conclude that in the context of Wis. Stat. § 301.04 the "sue and be sued" language clarifies that the DOC is a legal entity with the capacity to sue and be sued once immunity has been waived.

¶42  We acknowledge that there is conflicting federal case law regarding the import of "sue and be sued" provisions.  In Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 480 (1994), the United States Supreme Court determined that "sue and be sued" clauses are presumed to waive the sovereign immunity absent a showing that the clause was intended to have a more narrow purpose.  However, Meyer was addressing sovereign immunity under federal common law and not the sovereign immunity derived from Article IV, section 27 of the Wisconsin Constitution.  Accordingly, the federal law on this point is not

---

[7] See also A. Craig Carter, Is Sue and be Sued Language a Clear and Unambiguous Waiver of Immunity?, 35 St. Mary's L.J. 275, 277 (2003-04) (asserting that the "more[] plausible" interpretation of "sue and be sued" is "that it is simply a grant of capacity to be a party to a lawsuit").

persuasive.[8]  Cf. Federal Housing Admin. v. Burr, 309 U.S. 242, 246-47 (1940) ("State decisions barring garnishment against a public body though it may 'sue and be sued' are not persuasive here as they reflect purely local policies concerning municipalities, counties and the like, and involve considerations not germane to the problem of amenability to suit of the modern federal governmental corporation.").

¶43 Finally, Mayhugh advances that a determination that the DOC is immune from suit would violate Article I, Section 9 of the Wisconsin Constitution, which states that "[e]very person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character. . . ."

¶44 The argument that Article I, Section 9 is violated by the application of sovereign immunity has been consistently rejected by courts.  See, e.g., Forseth v. Sweet, 38 Wis. 2d 676, 688, 158 N.W.2d 370 (1968) (declining to find a violation of Art. I, Sec. 9 because "[t]here is no 'right' of a citizen to

---

[8] This analysis is distinct from that of Bahr v. State Investment Board, 186 Wis. 2d 379, 393-94, 521 N.W.2d 152 (Ct. App. 1994), in which the court referred to language from Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 480 (1994), to support its conclusion that the investment board was an independent going concern.  The Bahr court did not separately consider whether the legislature expressly waived sovereign immunity for the board.  We are not convinced that Bahr's determination that a "sue and be sued" clause supports a conclusion that an entity is an independent going concern should be extended to an analysis of whether there was an express waiver of sovereign immunity.

hold his sovereign substantively liable for a tort"); Apfelbacher v. State, 160 Wis. 565, 577, 152 N.W. 144 (1915) ("The immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. No constitutional right of its residents is violated whatever its action in that regard may be."); Erikson Oil Products, Inc. v. State, 184 Wis. 2d 36, 55, 516 N.W.2d 755 (Ct. App. 1994) ("In Cords, 62 Wis.2d at 52, 214 N.W.2d at 411, the court specifically rejected the argument that Wis. Const. art. I, § 9, gave an injured party the right to sue the State and concluded there is no right of a citizen to hold the sovereign liable."). We decline to diverge from this precedent.

V

¶45 In sum, we conclude that the DOC is entitled to sovereign immunity. The DOC lacks sufficient attributes to render it an independent going concern. Despite the breadth of its statutory powers, the character of those powers reveals that the legislature did not intend the DOC to be anything other than an arm of the state.

¶46 We further conclude that the state has not expressly waived the DOC's sovereign immunity. Wisconsin Stat. § 301.04, which permits the DOC to sue and be sued, is not an express waiver of the DOC's tort immunity but rather addresses the DOC's capacity to be sued. Accordingly, we affirm the court of appeals' determination that Mayhugh's suit against the DOC is barred by sovereign immunity.

21

*By the Court.*—The decision of the court of appeals is affirmed.

¶47 MICHAEL J. GABLEMAN, J. *(concurring).* At issue in this case is whether the legislature has waived sovereign, that is state immunity, in tort for injuries sustained by Mayhugh while, as an inmate, he attended a baseball game in Redgranite's recreational yard. I join the majority opinion affirming the court of appeals. The majority correctly determines that the Department of Corrections ("DOC") is not an independent going concern, and that the legislature has not waived the state's sovereign immunity in tort actions.

¶48 I cannot, however, join the majority's reliance on Lindas v. Cady, 142 Wis. 2d 857, 419 N.W.2d 345 (Ct. App. 1987), aff'd in part, rev'd in part, 150 Wis. 2d 421, 441 N.W.2d 705 (1989). Majority Op., ¶¶36-39. Simply put, the majority's reliance on Lindas for its conclusion that "sue and be sued" is not a waiver of sovereign immunity is misplaced because Lindas examined the "sue and be sued" language in Wis. Stat. § 46.017 (1979-80) which applied to the Department of Health and Social Services ("DHSS"), the DOC's predecessor. Here, we examine Wis. Stat. § 301.04,[1] which the legislature passed into law after the decision in Lindas and well after our decision in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), which abrogated the doctrine of governmental immunity for tort actions.

A.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶49 The rule of governmental immunity, that is municipal immunity, is distinct from sovereign immunity, that is state immunity. Governmental immunity grew out of "English law" and "expanded to the point where the historical sovereignty of kings was relied upon to support a protective prerogative for municipalities." Id. at 30. Governmental immunity was first adopted in Wisconsin in Hayes v. The City of Oshkosh, 33 Wis. 314, 318 (1873). However, applying the doctrine resulted in "some highly artificial judicial distinctions"[2] which led this court to re-examine governmental immunity in 1962. Holytz, 17 Wis. 2d at 32. In Holytz we abrogated the doctrine of governmental immunity such that, for municipalities, "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." Id. at 39.

¶50 However, our decision in Holytz did not go so far when it came to the State and its agencies. Rather, we made a "careful distinction . . . between the abrogation of the [governmental] immunity doctrine and the right of a private party to sue the state." Id. at 40. Thus, following our decision in Holytz, "there will be substantive liability on the part of the state, but the right to sue the state" can be waived

---

[2] "For example, the municipality may be immune or liable depending upon whether we determine that the particular function involved is 'proprietary' or 'governmental'." Holytz v. City of Milwaukee, 17 Wis. 2d 26, 32, 115 N.W.2d 618 (1962).

only by the legislature pursuant to article IV, section 27 of the Wisconsin Constitution.[3] Id. at 41.

### B.

¶51  In Lindas a former employee of DHSS, Lindas, sued the department for wrongful discharge and discrimination. Lindas, 142 Wis. 2d at 860. The circuit court dismissed Lindas's claim as barred by sovereign immunity. Id. Lindas appealed, arguing that by enacting Wis. Stat. § 46.017 (1979-80) the legislature waived DHSS' immunity as the text of § 46.017 (1979-80) stated that "the department [DHSS] may sue and be sued." The Lindas court reasoned that this "sue and be sued" language could not be considered a waiver of sovereign, that is state, immunity in tort because the statute was enacted "at a time when Wisconsin enjoyed governmental immunity from tort suits." Lindas, 142 Wis. 2d at 861.

### C.

¶52  However, Wis. Stat. § 301.04, the statute at issue in the instant case, was not enacted "at a time when Wisconsin enjoyed governmental immunity from tort suits." Id. Instead, Wis. Stat. § 301.04 was enacted in 1989, when the DOC was created, nearly three decades after the doctrine of governmental immunity was abrogated by this court in Holytz. As a result, the reasoning of Lindas cannot apply to Wis. Stat. § 301.04. If it did, then the interpretation of statutory language would be frozen in time at the moment a court first interprets it.

---

[3] "The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

3

¶53 This does not mean, however, that the majority's ultimate interpretation of "sue and be sued" in § 301.04 is incorrect, only that its reliance on Lindas is misplaced and unnecessary. Rather, the majority's conclusion that "sue and be sued" refers to "the capacity to sue and be sued" is well-reasoned and gives full effect to the language of § 301.04. Majority Op., ¶40 (emphasis added). For instance, in Boldt v. State, 101 Wis. 2d 566, 305 N.W.2d 133 (1981), we explained that Wis. Stat. § 775.01[4] "has been interpreted as giving the state's consent to suit in some causes of action but not in others." Id. at 572 (emphasis added). Specifically, Wis. Stat. § 775.01 waives the state's immunity for actions in contract, and sets forth the manner in which a claim may be brought. See Trempealeau Cnty. v. State, 260 Wis. 602, 605, 51 N.W.2d 499 (1952) (explaining that a contract claim may be brought under Wis. Stat. § 285.01, the predecessor statute to Wis. Stat. § 775.01). Thus, the state's sovereign immunity is waived by the "procedural implementation" of a statute which sets forth

---

[4] The full text of Wis. Stat. § 775.01 is:

Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11 (3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

the "manner and in what courts suits may be brought against the state." Forseth v. Sweet, 38 Wis. 2d 676, 684, 158 N.W.2d 370 (1968).

¶54 The legislature has not implemented a procedure by which the DOC or the state may be sued in tort, as it has in contract, and therefore, the DOC may not be sued in tort. As a result, the "sue and be sued" language in Wis. Stat. § 301.04 is not a waiver of sovereign immunity, but rather identifies the DOC as an entity that can be named in suits for which the legislature has waived sovereign immunity.

¶55 For the foregoing reasons, I respectfully concur.